WOODS BROTHERS CONSTRUCTION COMPANY, Appellee,
v. IOWA UNEMPLOYMENT COMPENSATION
COMMISSION et al., Appellants.

No. 45440.

FEBRUARY 11, 1941.

REHEARING DENIED JUNE 20, 1941.

Woods, Aitken & Aitken, R. W. Smith, and Emmert, James, Needham & Lindgren, for appellee.

J. Charles Crawley, Homer M. Lyon, and George Finch, for defendant commission-appellant.

Roland E. Tompkins, for defendants claimants-appellants.

STIGER, J.— In 1936 and 1937 plaintiff was engaged in the performance of contracts with the United States Government for the improvement of the navigability of the Missouri and other rivers under the supervision of United States Army engineers. The improvement was accomplished by fabricating lumber mats on floating barges and sinking them to the river bed at designated places.

In 1935 congress passed the Federal Social Security Act which excepted from employment benefits certain groups, among which are members of a crew of a vessel.

Section 907 (c), Title IX of the Federal Social Security Act [42 U. S. C., section 1107 (c) (3)] provides that the term "employment" means any service except (3) "Service performed as an officer or member of the crew of a vessel on the navigable waters of the United States."

Subsequently the Iowa legislature passed the Unemployment Compensation Law. Section 1551.25 (G) (7) (f), 1939 Code, provides that the term "employment" shall not include "Service performed as an officer or member of the crew of a vessel on the navigable waters of the United States;".

The language of the federal and state enactments excepting members of a crew from unemployment benefits is identical.

The barges on which the employee-claimants worked are "vessels." This fact is conceded by the parties and the principal question before us is whether claimants performed services as members of a crew.

The deputy commissioner and appeal tribunal decided that claimants were members of a crew of a vessel and denied their claims for benefits under the Iowa law. The Commission reversed the decisions of the deputy and appeal tribunal. The trial court reversed the decision of the Commission, held the claimants were members of a crew of a vessel and were not entitled to share in the benefit funds provided by the Iowa Unemployment Compensation Act.

We reach the conclusion the judgment of the district court is right and must be affirmed.

It is stipulated that the fifty-four claimants are " (1). Members of the mat crew; (2). Members of the rock barge crew; (3). Pile driver crew, including watchman, pile drivers and deck hands; (4). Tow boat deck hands and operators as men employed on tow boats."

The tow boat crew consists of an operator and two deck hands. Their exclusive duties are to navigate and look after the welfare of the boat. These employee-claimants are clearly members of a crew and appellants do not seriously contend otherwise. We will confine our discussion to the other claimants.

The lumber mats are fabricated on a floating mat barge. One end of the mat is attached to piling near the bank of the river. The weaving of the mat is a continuous process. When the

workmen have completed a segment of the mat, perhaps 15 or 20 feet long, it is unloaded into the river by the members of the crew propelling the barge from under the woven mat segment, the end of the mat remaining on the barge so that the process may be continued until it is completed in the designated length. The barges are moved from place to place during the fabrication process solely by man power, the members of the crew pulling on ropes wrapped around capstans, the other end of the ropes being attached to distant anchor points, and pushing against the mat. The crew consists of about 40 men under the direction of a foreman.

As stated by one of the claimants, "the mat barge was absolutely controlled by hand."

The Commission in its finding of facts stated:

"The barges on which the mats were woven were tied to anchor pilings driven into the bed of the stream upstream from the barges, so as to hold the barges stationary in the river at the end of the mat under construction. As the mats were woven on the mat barge, the barges were pushed and pulled sideways from under the mats and the weaving continued so as to make a continuous mat from the shore, extending out for a considerable distance into the river. * * *

"Beyond and toward midstream from the mat barges, other pilings were driven into the bed of the stream from which lines were run and fastened to the mat barges. As the mats were woven on the barges, they were unloaded from the barges by pulling and pushing the barges from underneath the mats outward from the shore. The barges were moved sideways by the men standing on the barges, pushing against the mats and pulling on the lines fastened to the piling farther out in the stream. The barges were thus moved a few feet at a time from under the mats as the mats were continuously woven on the barges."

When a segment of the mat was unloaded into the river by the crew it floated temporarily. The rock barge crew, apparently the same as the mat barge crew, would then move the vessel into position and unload the rock on the floating mat which would then sink to the bottom of the river. The rock barge is

propelled and handled in much the same manner as the mat barge. (We here insert Exhibit E which shows the mat barge,

the mat and the rock barge.) The barges are apparently about 30 feet wide and 125 feet long.

The pile drivers are built upon barges and are used for driving wooden piling into the bed of the river for purposes connected with the improvement. The crew consists of a foreman, engineer, three deck hands and two winchmen who operate the hoist spools. The vessel is propelled manually by means of a series of lines attached to distant anchor points and wrapped around the hoist spools. The floating pile driver "does considerable moving around from place to place. The winchmen control the floating pile driver through instructions from the foreman." The stipulation makes no reference to floating dredge crews. It appears, however, that the crew of this vessel consists of a foreman and three deck hands who operate the dredging and propelling machinery and keep the vessel as clean as possible and in repair.

In 1936 and prior to the enactment of the Iowa law the federal treasury department promulgated and published Regulation No. 90 [Article 206(3)], 20 C. F. R., section 402.9, which

interpreted and defined the phrase ''officers and members of a crew of a vessel'' contained in the federal law as follows:

''The word 'vessel' includes every description of water-craft or other contrivance, used as a means of transportation on water. It does not include any type of aircraft.

''The expression 'officers and members of the crew' includes the master or officer in charge of the vessel, *however designated,* and every individual, subject to his authority, serving on board and *contributing in any way to the operation and welfare of the vessel.* The exception extends, for example, to services rendered by the master, mates, pilots, pursers, surgeons, stewards, engineers, firemen, cooks, clerks, carpenters, deck hands, porters, and chambermaids, and by seal hunters and fishermen on sealing and fishing vessels.'' (Italics supplied.)

In 1937 the bureau of internal revenue, authorized to make and publish rules and regulations with the consent of the treasury department with reference to Title IX, by section 1102, [42 U. S. C., section 1108], stated in a letter to plaintiff herein:

''It is held by this office that the types of water craft known as pile drivers, matt barges, rock barges, shop barges and quarter-boats, which are used as a means of transportation on the navigable waters of the United States, even though not self-propelled, are vessels within the meaning of the Act, and the services performed by the individuals, who compose the crews of such vessels and who *perform services in connection with the operation or welfare of these vessels,* are excepted under Section 907 (c) 3, Title IX of the Act.'' (Italics supplied.)

The Iowa Unemployment Compensation Law was enacted after the publication of Regulation No. 90 by the federal treasury department.

The state law does not define the scope and meaning of the words ''member of the crew'' as used in section 1551.25, supra.

Plaintiff contends and the trial court held that the legislature intended that ''any person contributing in any way to the operation and welfare of a vessel,'' is a member of a crew. Defendants claim that a person must be ''primarily connected with

the navigation of a vessel" in order to be classified as a seaman or member of a crew.

In its decision, the Commission stated:

"The term 'officer or members of the crew of a vessel' includes the master or officer in charge of a vessel and the individuals subject to his authority serving on board and *contributing to the operation and welfare of a vessel as an instrumentality of transportation.*" (Italics supplied.) This statement is in harmony with the common meaning of the words "member of a crew" and the interpretation made by the federal agencies. However, later in the opinion the Commission adopted a narrow restricted definition of a seaman or member of a crew in stating "claimants' employment was not primarily connected with the navigation of a vessel. They were not seamen." An employee may be a seaman or member of a crew though his work is not primarily connected with the navigation of a vessel. The Commission erred in its construction of the phrase.

Section 1551.17 (K), 1939 Code, reads in part:

"K. *State-federal cooperation.* In the administration of this chapter, the commission shall cooperate to the fullest extent consistent with the provisions of this chapter, with the federal social security board, created by the social security act, passed by congress and approved August 14, 1935, as amended;" etc.

While the construction of the phrase in the federal act by the treasury and bureau of internal revenue is not binding on this court, it is entitled to great weight in determining the construction to be given the same phrase in the subsequent Iowa enactment. Industrial Commission v. Woodlawn Cemetery Assn., 232 Wis. 527, 287 N. W. 750; Capital Building and Loan Assn. v. Kansas Commission of Labor and Industry, 148 Kan. 446, 83 P. 2d 106, 18 A. L. R. 1212; Unemployment Compensation Commission of N. C. v. Wachovia Bank & T. Co., 215 N. C. 491, 498, 2 S. E. 2d 592, 597. In the latter case the opinion states:

"The provisions for the payment of unemployment compensation is a national plan and contemplates a cooperative legislative effort by State and National Governments for carrying

out a public purpose common to both, which neither could fully achieve without the cooperation of the other. The Unemployment Compensation Acts adopted in the several states were substantially contemporaneous. They were adopted pursuant to and in accord with the Social Security Act of the Federal Government. Therefore, in interpreting our act serious consideration is to be given to the construction placed upon the Federal statute by the administrative agency charged with its execution. U. S. v. Cerecedo Hermanos, etc., 209 U. S. 337, 338, 28 S. Ct. 532, 52 L. Ed. 821; Komada & Co. v. United States, 215 U. S. 392, 30 S. Ct. 136, 54 L. Ed. 249; Powell v. Maxwell, 210 N. C. 211, 186 S. E. 326; Board of Graded School Com'rs of Winston-Salem v. Board of Education, 163 N. C. 404, 79 S. E. 886.''

In interpreting the word ''vessel'' the treasury department in Regulation No. 90 adopted the definition of the word found in 1 U. S. C. A., section 3. See City of Los Angeles v. United Dredging Co., 14 F. 2d 364.

The construction of the words ''member of a crew'' by Regulation No. 90 as an individual ''contributing in any way to the operation and welfare of the vessel'' is in harmony with federal decisions. In The Buena Ventura, 243 F. 797, l. c. 799, it is stated:

''The word 'seaman' undoubtedly once meant a person who could 'hand, reef and steer,' a mariner in the true sense of the word. But as the necessities of ships increased, so the word 'seaman' enlarged its meaning. Even in Bean v. Stupart, 1 Doug. 11; it was held that a warranty to carry '30 seamen besides passengers' meant that the 30 seamen included a cook, a surgeon, and other employes, and did not mean merely able seamen. And a cook was explicitly held to be a seamen in this court by Betts, J., in Allen v. Hallet, Abb. Adm. 573, Fed. Cas. No. 223. By the same course of reasoning an employe on a barge may be regarded as a seaman. The Walsh Bros. (D. C.) 36 Fed. 607. Also, a cooper. United States v. Thompson, 1 Sumn. 168, Fed. Cas. No. 16492. See, also, The Mary Elizabeth (C. C.) 24 Fed. 397. This court has even decided that a bartender may rank as a seaman, in The J. S. Warden (D. C.) 175 Fed. 314.''

In Saylor v. Taylor, 77 F. 476, 479, the opinion states:

"Hence it is that in all times and in all countries those who are employed upon a vessel in any capacity, however humble, and whose labor contributes in any degree, however slight to the accomplishment of the main object in which the vessel is engaged, are clothed by the law with the legal rights of mariners, 'no matter what may be their sex, character, station, or profession.' "

So in the instant case all that claimants did in their employment contributed to the accomplishment of the main object in which the vessels were engaged—the maritime project of control of the channel and the improvement of the navigability of the river.

In construing the phrase we may consider the history of the legislation, the facts that the Iowa Unemployment Compensation Act was adopted as a consequence of and in conformity with the federal act and after the publication of federal Regulation No. 90 and contained the identical exception as the federal act.

In H. Duys & Co. v. Tone, 125 Conn. 300, 308, 5 A. 2d 23, 26, the court, in construing parallel exemptions in the Federal Social Security and the State Unemployment Compensation Acts, and after referring to the report of the special commission, said:

"In so utilizing them we are justified in assuming that the commission was cognizant and took account of not only the provision of the federal act which was 'paralleled' but also the federal regulation defining the term 'agricultural labor' which had been promulgated the preceding February, and that it, and the Legislature in adopting the provision, contemplated and intended a like meaning as attaching thereto."

■ We conclude the legislature intended the words "member of a crew" to mean a person contributing in any way to the operation and welfare of the vessel. This is not only the interpretation made by the treasury department and bureau of internal revenue but is also substantially the same construction placed on the word "crew" or "seaman" by the federal decisions. The claimants supplied the power that moved the vessels; they operated the vessels; they labored solely to accomplish the

only enterprise in which the vessels were engaged which was to perform the maritime project of improving the navigability of the river. The safety, welfare and control of the vessels and the project rested in their hands.

Section 1551.12(J) provides that on appeal the decision of the commission may be set aside, reversed, or modified:

"3. If the facts found by the commission do not support the order or decree.

"4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

We are of the opinion the decision should be reversed on grounds Nos. 3 and 4 and that the trial court was right in holding that "the claimants were 'members of a crew of a vessel' and come within the exemption of the Iowa Unemployment Act, 1551.25-G-7 (f) Code of 1939, and are not entitled to share in its benefit funds, and, therefore, it follows that the decision of the Commission from which this appeal is taken should be reversed."

We have carefully reviewed the cases cited by appellants to sustain their contention that claimants are not members of a crew because they were not primarily engaged in the navigation of the vessels. The cited cases involved the Federal Longshoremen's Act which has a different history and aim than the law we are considering. In South Chicago Coal and Dock Co. v. Bassett, 309 U. S. 251, 259, 60 S. Ct. 544, 549, 84 L. Ed. 732, 737, the court after reviewing the legislative history of the Longshoremen's and Harbor Workers' Compensation Act, states:

"That is our concern here in construing this particular statute—the Longshoremen's and Harbor Workers' Compensation Act—with appropriate regard to its distinctive aim. We find little aid in considering the use of the term 'crew' in other statutes having other purposes." See Moore Dry Dock Co. v. Pillsbury, 100 F. 2d 245, for a reference to the legislative history of the Longshoremen's Act.

However, the discussion of the meaning of the word "crew" in the cited cases is reconcilable with the conclusion we have reached in this case.

It is unnecessary for us to consider the able arguments submitted by the parties on the question whether defendants' construction of the statute violates Article III, section 2, of the Federal Constitution which gives federal courts exclusive jurisdiction in admiralty and maritime cases.—Affirmed.

HALE, C. J., and BLISS, MILLER, SAGER, and WENNERSTRUM, JJ., concur.