INDEPENDENT SCHOOL DISTRICT OF CEDAR RAPIDS et al., Appellees,
v. IOWA EMPLOYMENT SECURITY COMMISSION et al.,
Appellees; JOHN M. GRIMES, Treasurer of State, et al.,
Appellants; BOARD OF WATER WORKS TRUSTEES OF
CITY OF DES MOINES et al., Interveners,
Appellees; FRED E. MOORE, Intervener,
Appellant.

No. 46915.

1302

John M. Rankin, Attorney General, R. G. Yoder, First Assistant Attorney General, and Oscar Strauss, Assistant Attorney General, for John Grimes, Treasurer of the State of Iowa, and Fred Porter, Comptroller of the State of Iowa, appellants.

Evans, Riley, English & Jones, of Des Moines, for Fred E. Moore, intervener, appellant.

Herrick, Sloan & Langdon, of Des Moines, for Independent School District of Cedar Rapids, Linn County; Independent School District of Sioux City, Woodbury County; Independent School District of Lyons, Clinton County; Independent School District of Des Moines, Polk County; Independent School District of Clinton, Clinton County; Independent School District of Dubuque, Dubuque County; and Kenneth F. Stratton, appellees.

F. D. Riley, of Des Moines, for Iowa Employment Security Commission, appellees.

A. A. McLaughlin and Gibson, Stewart & Garrett, all of Des Moines, for Board of Water Works Trustees of the City of Des Moines, interveners, and Edna L. Harnagel, intervener, appellees.

GARFIELD, C. J.—Chapter 91, Acts of the Fifty-first General Assembly, now chapter 97, Code, 1946, which became law July 4, 1945, established an Old-Age and Survivors' Insurance System for the public employees of the state, its political subdivisions and instrumentalities, including school districts. The law is patterned after Subchapter II of the Federal Social Security Act (42 U. S. C., section 401 et seq.). It provides for a fund created in the first instance by a tax upon each employer and employee equal to one per cent of wages paid through 1948 and two per cent of such wages thereafter. (Code section 97.8.) The tax upon employees is collected by deductions from wages (section 97.9) which are matched by the employer (section 97.12). The political subdivision is directed to levy a tax sufficient to meet its obligations under the act (section 97.6).

The system is administered by the Iowa Employment Security Commission, herein called the commission (section 97.3). The treasurer of state is the custodian and trustee of the fund, administers it as directed by the commission, and makes disbursements upon warrants drawn by the comptroller as ordered by the commission (section 97.5).

Chapter 387, Acts of the Thirty-seventh General Assembly, enacted in 1917, authorized any independent school district having a population of 75,000 or more to establish a pension and annuity retirement system for its teachers. This act was later amended. In its present form, as found in sections 294.8–294.10, Code, 1946, it provides that any independent school district located in whole or in part within a city having a population of 25,100 or more may establish a pension and annuity retirement system for its teachers, provided such system, in cities having a population less than 75,000, be ratified by vote of the people. The fund for such system is created: (1) by an assessment of the teachers not exceeding one per cent of their salaries or such greater percentage as the board of directors may authorize and a majority of the teachers agree to pay (2) by a

tax not exceeding the amount assessed against the teachers and (3) from the interest on any fund created by gift or otherwise. The directors of the school district are the trustees, formulate the plan of retirement, and make rules and regulations for the operation of the system.

At the effective date of chapter 97, which provides for the new state system, each plaintiff school district had in effect its own pension plan under the authority of what is now section 294.8 et seq. The Des Moines system was first established in 1918 and now has over nine hundred members. Various provisions of the Des Moines plan, together with the law under which it was established, are explained in Talbott v. Independent Sch. Dist., 230 Iowa 949, 299 N. W. 556, 137 A. L. R. 234.

The principal question presented is whether plaintiff districts may, as they desire, maintain and support the new state system and also continue to support their own previously established systems. Defendant Employment Security Commission (which, as stated, administers the state system) has ruled they may do so. The attorney general of the state, to the contrary, ruled that as to any particular group of teachers only one retirement system maintained in part by taxation may be in operation at any particular time. Upon the strength of the attorney general's opinion, defendant comptroller refused to approve budget estimates of some of plaintiff districts which contained estimated levies for support of both systems. The Des Moines district certified that for 1946 $127,000 was required to be levied for support of its own plan and $28,000 for support of the state system.

The controversy, therefore, is between plaintiff districts, a teacher in the Des Moines district, and defendant (employment security) commission, on the one hand, and defendants treasurer and comptroller, on the other. Fred E. Moore, a Des Moines taxpayer, has intervened on the side of the treasurer and comptroller. The trial court held in favor of plaintiffs and the commission, contrary to the ruling of the attorney general. Defendants treasurer and comptroller and intervener Moore have appealed.

A related question is presented by the petition of intervention of the Board of Water Works Trustees of Des Moines

and one of its employees, Edna Harnagel, and the answers thereto. Chapter 412, Code, 1946, enacted in 1945 by the Fifty-first General Assembly, authorizes the establishment, in cities having a population of 5,000 or more, of a pension and annuity retirement system for employees of municipally owned and operated public utilities. Chapter 412 is similar to section 294.8 et seq., heretofore summarized, under which the pension plans of plaintiff districts were established, except: the amount of assessments upon wages for support of the plan is not limited by chapter 412; the employer's contribution is from moneys derived from operation of the utility rather than from taxation; the city council or board authorized by law to manage the utility formulates the system, makes rules and regulations therefor, and is authorized to contract with a legal reserve insurance company for the payment of the pensions and annuities.

Pursuant to chapter 412 the Board of Water Works Trustees of Des Moines adopted its pension plan on December 10, 1945. It has about one hundred fifty employees. It desires to continue its own plan and also to participate in the state system created in 1945 by chapter 97. It asked in its petition of intervention, in which an employee joined, for a declaratory judgment that it has such right. The trial court so adjudged and defendants treasurer and comptroller and the intervening taxpayer have also appealed from this adjudication. Defendant commission has adopted the argument of the water works board as well as that of plaintiffs.

The vital provisions of chapter 97 (which establishes the state system) here involved are:

"97.45 Definitions. When used in this chapter * * *

"2. The term 'employment' means any service performed after December 31, 1945, under an employer employee relationship, under the provisions of this chapter, except:

"a. Any service performed in the employ of any employer which has of the effective date of this chapter its own retirement plan.

"b. Any service performed in any calendar quarter in which the remuneration for such services does not exceed the sum of fifty dollars, unless * * *

"3. *a.* The term 'employer' means the state of Iowa, the counties, municipalities and public school districts therein and all of the political subdivisions thereof and all of their departments and instrumentalities, all hereinafter called political subdivisions excepting only those whose employees are now covered by a retirement plan in which such political subdivision participates in financing. *Provided, that such excepted political subdivision may by election come under the provisions of this chapter in accordance with the regulations prescribed by the commission.* * * *

"13. Exclusion from benefits: Members of the state legislature, officials * * * elected by the vote of the people; employees who are members of any other retirement system in the state which is maintained in whole or in part by public contributions *unless such political subdivision or its instrumentalities as a whole elects to adopt this system.*

"97.46 Other political subdivisions. Any political subdivision or the instrumentalities thereof not covered by this chapter may become subject hereto by application to the commission for such coverage on all or that part of its employees that are not covered by this chapter and by complying with the regulation prescribed by the commission."

I. The provisions of special importance here are those we have italicized. Appellees concede a political subdivision "whose employees are now covered by a retirement plan" to which the subdivision contributes does not automatically participate in the state system. Appellants in turn concede that such subdivision may "by election" adopt the state system. They contend, however, as the attorney general ruled, such subdivision cannot adopt the state system without rejecting its own retirement plan.

Like the trial court, we cannot agree with appellants' contention. It is a complete answer that nothing in the statutes forbids a political subdivision from continuing its own retirement plan in order to adopt the state system. We have no power to write such a provision into the law. Iowa Public Service Co. v. Rhode, 230 Iowa 751, 754, 298 N. W. 794, 796; Eysink v. Board of Supvrs., 229 Iowa 1240, 1244, 296 N. W. 376,

378, and authorities cited; 50 Am. Jur. 221, section 234; 59 C. J. 974, section 576.

Appellants rely upon use of the words "by election" in the last sentence of section 97.45 (3a): "Provided, that such excepted political subdivision may by election come under the provisions of this chapter * * *" and the word "elects" in this part of 97.45 (13): "unless such political subdivision * * * elects to adopt this system." We are told these words show the legislature intended to require abandonment of an existing retirement plan as a condition to adoption of the state system. Basis for the argument is that to "elect" means to choose between alternatives.

The argument does not appeal to us. It is true chapter 97 affords a choice to a political subdivision with its own retirement plan. But we think such choice is between adoption and rejection of the state system—not between adopting the state system and rejecting the existing plan on the one hand and retention of the existing plan without adoption of the state system on the other. The statute permits a political subdivision with a retirement plan to adopt the state system but does not compel such adoption. Nor does it compel abandonment of an existing plan in order to adopt the state system.

The "election" to "come under the provisions of this chapter" permitted by section 97.45 (3a) must be "in accordance with the regulations prescribed by the commission." And section 97.46 provides in effect for coverage under the act of any political subdivision not previously covered "by application to the commission" and compliance with its regulation. It is not claimed plaintiff districts or intervener board have not sufficiently complied with the regulation of the commission.

Section 294.8 et seq., under which plaintiffs' pension plans are authorized, contain no provision for the abandonment of an existing plan. Appellants concede that an "old pension system cannot be discontinued without making due provision for those whose rights have become vested, i. e., retired teachers," and that, "To protect their vested rights, funds would continue to be raised by taxation under the old system."

It is not a simple matter to abandon an existing pension plan. Not only is the question of vested rights to be considered

but teachers who had contributed to the existing system should as a matter of fairness be given some consideration even though they may have no vested right to a pension. See, on this question, Talbott v. Independent Sch. Dist., supra, 230 Iowa 949, 299 N. W. 556, 137 A. L. R. 234, and authorities cited; annotation 137 A. L. R. 249. There is also the matter of disposition of funds on hand and other questions to be determined. There is authority for the position that an existing pension plan may not legally be abandoned without legislative authorization. See Thompson v. City of Marion, 134 Ohio St. 122, 16 N. E. 2d 208.

Not only is there no authorization in section 294.8 et seq. for the abandonment of a plan established thereunder but no such provision appears in chapter 97. Nor does this chapter purport to repeal section 294.8 et seq. Further, during consideration of what is now chapter 97 the house of representatives rejected an offered amendment thereto which permitted any school district with a pension plan under what is now section 294.8 et seq. to terminate such plan. If chapter 97 were ambiguous, the rejection of this amendment might properly be considered as evidence that the legislature intended the act to mean what we have held it does mean. 50 Am. Jur. 322, section 330; 59 C. J. 1017–1019, section 605; United States v. United Shoe Mach. Co., D. C., Mo., 264 F. 138, 174, and cases cited (affirmed 258 U. S. 451, 42 S. Ct. 363, 66 L. Ed. 708). See, also, Greene County Rural Elec. Co-Op. v. Nelson, 234 Iowa 362, 367, 12 N. W. 2d 886, 889.

We have frequently held that history of legislation may properly be considered in case of ambiguity. Woods' Bros. Constr. Co v. Unemployment Compensation Comm., 229 Iowa 1171, 1179, 296 N. W. 345, 349; McKinney v. McClure, 206 Iowa 285, 220 N. W. 354; Des Moines City Ry. Co. v. City of Des Moines, 205 Iowa 495, 498, 216 N. W. 284.

"Rules against reading anything into a statute by implication are particularly applicable to provisions expressly rejected by the legislature." 50 Am. Jur. 322, section 330.

To the same effect is Greene County Rural Elec. Co-Op. v. Nelson, supra, 234 Iowa 362, 367, 12 N. W. 2d 886, 889.

Further, the same legislature that enacted chapter 97 also

enacted chapter 412 under which the Des Moines Water Works pension plan was established. There is no provision in either chapter which prohibits a utility with its own plan from participation in the state system, if it so elects.

We see no necessity for the provisions of chapter 97 that excepted political subdivisions may elect to come under the act unless it was intended they may also retain their own pension plans. The state system automatically applies to all employers defined in the act who do not have retirement systems. If, therefore, a school district were permitted to and did abandon its own plan, it would come under the provisions of the state system without election. Thus the provisions regarding election would be superfluous. If fairly possible, a statute will not be construed so part of it is rendered superfluous. Effect should ordinarily be given to every provision of an act. Dickson v. Fidelity & Cas. Co., 223 Iowa 518, 521, 273 N. W. 102, and authorities cited; Anderson v. Jester, 206 Iowa 452, 463, 221 N. W. 354; 50 Am. Jur. 364, section 359; 59 C. J. 999, section 596.

■ II. Appellants argue the decision below permits "double taxation" in plaintiff districts. This does not apply to intervener board because, as stated, under chapter 412 its contribution to its pension fund is derived from operation of the utility rather than from taxation. Double taxation, in the proper meaning of the term, is within the power of the legislature but is not favored by courts. Intention of the legislature to impose it will not be presumed but must appear by clear and unequivocal language. Security Sav. Bk. v. Board of Review, 189 Iowa 463, 472, 178 N. W. 562; Judy v. Beckwith, 137 Iowa 24, 31, 32, 114 N. W. 565, 15 L. R. A., N. S., 142, 15 Ann. Cas. 890; Cook v. City of Burlington, 59 Iowa 251, 253, 13 N. W. 113, 44 Am. Rep. 679; 51 Am. Jur. 340, section 286; 61 C. J. 139, 140, section 71. The effect of our holding in Division I is that the legislative intent here clearly appears.

But we do not think there is double taxation here. Before double taxation exists both taxes must have been imposed for the same purpose, upon part only—not all—of the property in a particular taxing district. If all property in a given taxing unit is twice taxed under valid levies the result is the same as if a single levy of the total amount were imposed. 51 Am. Jur. 336–

338, section 284; 61 C. J. 137, section 69. Here any increase in taxes in any of plaintiff districts is imposed upon all taxable property in the district.

We are not convinced the tax under chapter 97 and the tax in support of the local pension plans under section 294.8 et seq. are for the same purpose. Chapter 97 was enacted as a supplement to Subchapter II of the Federal Social Security Act (42 U. S. C., section 401 et seq.) as part of a "coöperative legislative effort by state and national governments, for carrying out a public purpose common to both, which neither could fully achieve without the coöperation of the other." Carmichael v. Southern Coal & Coke Co. (Stone, J.), 301 U. S. 495, 526, 57 S. Ct. 868, 880, 81 L. Ed. 1245, 1263, 109 A. L. R. 1327, 1343.

See, also, Steward Machine Co. v. Davis (Cardozo, J.), 301 U. S. 548, 588, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293. A similar statement is quoted with approval in Woods Bros. Constr. Co. v. Unemployment Compensation Comm., supra, 229 Iowa 1171, 1177, 1178, 296 N. W. 345, 348. Without going into detail, it is sufficient to say there are important differences between the state system and the local pension plan in at least four plaintiff districts. There is much testimony to the effect "there is a material difference between the two types of plans."

Adoption of the state system by a subdivision with its own plan will not necessarily increase the burden upon taxpayers. Section 294.9 does not limit the amount of taxes to be levied in support of a local plan except it may not exceed the amount contributed by the teachers who may agree to contribute any percentage of their salaries the board may authorize. The cost to the taxpayers of maintaining a local plan may thus exceed the cost to them of participating in both systems.

There is nothing in the statutes which prohibits deduction of contributions under the state system from those under a local plan. In fact, the Des Moines Water Works plan provides that contributions thereto shall be reduced by the amount of contributions to the state system. It appears that participation in both the state system and the Des Moines plan can procure for teachers considerably greater benefits at the same cost to the teachers and the taxpayers as would result from participation in only the local plan.

III. Intervener-appellant Moore contends the trial court construed Code chapter 97 so it violates section 6, Article I and section 30, Article III of the Constitution of Iowa, which provide, respectively:

"All laws of a general nature shall have a uniform operation," and "The General Assembly shall not pass local or special laws * * * For the assessment and collection of taxes * * * In all the cases above enumerated * * * all laws shall be general, and of uniform operation throughout the State."

This excerpt from the trial court's findings of fact and conclusions of law is assailed:

"Any political subdivision *having* an established pension system may elect to come also under the provisions of Chapter 91 [51 G. A.], without abandoning or waiving the established pension system." (Italics supplied.)

It is said the effect of this conclusion is that plaintiff districts *and none other*, except the Davenport district (the only ones with existing pension plans when chapter 97 [Code, 1946] took effect), are the only districts which may participate in both systems and this discriminates against school districts in other cities with a population of 25,100 or more which may desire to establish retirement systems under section 294.8 et seq.

The conclusion above quoted does not appear in the decree. It is clear from the decree, as well as the entire findings and conclusions, the court held any school district that had at the effective date of chapter 97, *or that should later establish*, a retirement system under section 294.8 et seq. may adopt the provisions of chapter 97 without abandoning its own system. Such holding involves no discrimination against school districts, other than plaintiffs and the Davenport district, that are eligible under section 294.8 to establish their own retirement systems. Since the decree is right, we are not concerned with any claimed error in one of the conclusions. See Creel v. Hammans, 232 Iowa 95, 5 N. W. 2d 169, and authorities cited.

It is true some of the language of chapter 97, taken literally, seems to indicate that only those political subdivisions with retirement systems in existence at the time the act took effect are excepted from automatic coverage thereunder and may by

election participate in it. However, both sides agree the legislature never intended to discriminate against school districts that might, subsequent to the effective date of chapter 97, establish retirement plans under section 294.8 et seq. and that they would have the same rights under chapter 97 to elect to participate in the state system as districts with retirement plans in existence when the act took effect.

Since the parties agree chapter 97 is not discriminatory in the respect appellant Moore contends the above-quoted conclusion of the trial court indicates we are not called upon to decide whether the act violates the constitutional provisions mentioned in this division. Similar questions were involved in Knudson v. Linstrum, 233 Iowa 709, 8 N. W. 2d 495; State ex rel. Welsh v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218; State ex rel. Pritchard v. Grefe, 139 Iowa 18, 117 N. W. 13.

IV. Appellant Moore contends that if Code chapter 97 permits participation by a single political subdivision in both state and local systems it violates section 29, Article III, of the Constitution of Iowa, which provides:

"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title.

The title to the act is:

"AN ACT to provide for the general welfare of public employees by establishing an old age and survivor insurance system; to provide for the administration of such system; to provide for deductions from pay of public employees and contributions from the state, political subdivisions and other instrumentalities of the state and all political subdivisions thereof including public school districts to raise funds for such retirement system, and to repeal conflicting laws."

The argument is that if the act permits participation in both state and local systems by a single subdivision the constitutional provision requires such fact be stated in the title so those who read it would thereby have knowledge thereof.

The constitution requires the subject embraced in the act—not matters properly connected therewith—to be expressed in the

title. We have uniformly held this constitutional provision should be liberally construed so one act may embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto. The object was to prevent the union in one bill of matters having no fair relation, to prevent surprise in legislation. That only is prohibited which by no fair intendment can be considered as germane. The title need not be an index or epitome of the act. The constitution is not violated if the provisions of the law relate or are incidental to the subject indicated in the title. In support of these views, see State v. Talerico, 227 Iowa 1315, 1322, 1323, 290 N. W. 660, and cases cited; State v. Cowen, 231 Iowa 1117, 1131, 3 N. W. 2d 176, and cases cited; Burlington & Summit Apts. v. Manolato, 233 Iowa 15, 18, 19, 7 N. W. 2d 26, 144 A. L. R. 251.

By the above tests the title to chapter 91 [chapter 97, Code, 1946] meets the constitutional requirement. It was not necessary that the title state the act applies to a political subdivision with its own retirement plan which elects to participate in the state system. The provisions which entitle plaintiff districts to elect to adopt the system established by the act are germane and related to the subject expressed in the title. They are not incongruous thereto. One who reads the title to the law should have no legitimate cause for surprise that such provisions are included in the act. See authorities last above.

Upon a consideration of all questions presented, the decree is—Affirmed.

All JUSTICES concur.