J. F. Bowery v. Hartford Accident & Indemnity Company, Appellant.—No. 39972.—202 S. W. (2d) 790.

Division One, May 12, 1947.

Rehearing Denied, June 9, 1947.

· *Henry Depping, Hale Houts* and *Hogsett, Trippe, Depping & Houts* for appellant.

*C. W. Prince* and *Wm. Dennis Bush* for respondent.

DOUGLAS, P. J.—This is an action for fraud against the insurance carrier of plaintiff's employer.

In 1932 plaintiff was injured while working on a barge floating in the Missouri River. He claims that he had a cause of action against his employer under the Merchant Marine Act of June 5, 1920, commonly known as the Jones Act; that a claim adjuster of defendant insurance company made false and fraudulent representations to the effect that plaintiff had no remedy under the Jones Act but was limited to the Missouri Workmen's Compensation Act; that due to such representations, plaintiff accepted Workmen's Compensation payments, and did not discover the fraud until the statute of limitations had run against an action under the Jones Act. Plaintiff obtained a verdict for $12,000, and defendant has appealed.

A number of issues are raised by the appellant, but since we have come to the conclusion that the case must be reversed because plaintiff had no remedy under the Jones Act, not being a member of the crew of a vessel, it will be unnecessary to consider any other issues.

Plaintiff, a laborer, who lived in a nearby town, was employed by the day for six days a week to assist in the construction of a mat made of woven boards which was being constructed as part of the foundation of a dike used to assist in improving the channel of the Missouri River. The mat, which was 86 to 104 feet wide, was started on the bank and then was woven continuously out into the river from the bank. The weaving was done by plaintiff and others on a barge without motive power which was anchored out in the river by ropes attached to pilings driven into the river further upstream. Lashed to the barge in which plaintiff worked was another barge known as a lumber barge, which provided the material used in weaving the mat. Whenever a section of the mat about 15 feet long had been woven on the mat barge, the plaintiff and other men in the mat barge shoved against the mat so that the barge would be pushed out from under the mat, which was allowed to drop into the river, where subsequently it was weighted down with rock to form a foundation for the dike. Plaintiff had nothing to do with handling the ropes by which the barge was anchored or with the transportation of the barge to the locality at which it was anchored. His sole duty in connection with any movement of the barge was to push on the section of the mat which he had helped to construct. He had no duties with reference to keeping the barge in repair. Neither he nor anyone else lived on the barge, and he went home for the night at the end of the day's work. When the mat had been woven so that it extended out from the south bank to within about 100 feet of the north bank, plaintiff sustained an injury alleged to be due to the negligence of his employer, which resulted in a hernia requiring an operation. According to conflicting evidence, a young insurance claim adjuster, who was a law student attending evening classes and was employed by defendant during the day, made representations to the effect that plaintiff had no right to a jury trial for damages under the Jones Act but was limited to compensation·

under the Missouri Workmen's Compensation Act and that, relying upon such representations, plaintiff accepted his remedy under such act and did not discover the fraud until the statute of limitations had run against an action under the Jones Act.

There was also some evidence indicating that plaintiff should have been awarded more compensation under the Missouri Act, if applicable, than he actually received. Although plaintiff claimed permanent partial disability the Commission found only temporary disability.

The Jones Act, Section 688, Title 46, U. S. C. A. provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . ."

We will assume for the purposes of this opinion that the barge upon which plaintiff was working would be deemed a "vessel" within the meaning of the Jones Act.

 Section 713, Title 46, U. S. C. A. defines a seaman as "every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board . . ." a vessel. Plaintiff contends that said Section 713 applies to Section 688, the Jones Act. Section 713 so states, but in Warner v. Goltra, 293 U. S. 155, it was held that this was a mistake of the compilers of the Code and that Section 713 applied only to the Act of June 7, 1872 dealing with merchant seamen and had no application to the Jones Act, reversing the opinion of this court to the contrary. Warner v. Goltra, 334 Mo. 396, 67 S. W. (2d) 47.

 In International Stevedoring Company v. Haverty, 272 U. S. 50, decided in 1926, the term "seaman" in the Jones Act was given a very broad interpretation. A longshoreman in the employ of a stevedoring company, and who was engaged in stowing freight in the hold of a vessel tied up to a dock, was held to be a "seaman" within the meaning of the Jones Act. However, in 1927 the scope of the Jones Act was greatly limited by the Longshoreman's and Harbor-Workers' Compensation Act, Sections 901-950, Title 33 U. S. C. A. The effect of the Longshoremen's Act was to eliminate from the scope of the Jones Act all persons theretofore classed as "seamen" who were not either the master or a member of the crew. South Chicago Coal & Dock Co. v. Bassett, 309 U. S. 251; Swanson v. Marra Bros., Inc., 328 U. S. 1.

The South Chicago Company case contains an extensive discussion of the history of the modification of the Jones Act through the Longshoremen's Act. The latter Act provides for state compensation if applicable under the State laws, but if there is no such compensation coverage then the Longshoremen's Act provides an exclusive remedy

of workmen's compensation. The bill, as introduced in Congress, originally provided compensation for all persons working on or about vessels and would apparently have completely eliminated the Jones Act. However, the seamen's union preferred their rights under the Jones Act and obtained an amendment of the bill. At first this amendment was broad enough to exempt all seamen from the bill but in its final passage the words "a master or member of the crew" were substituted for "seamen," and they were excluded. Thus the intent of Congress was to limit the Jones Act to the master and members of the crew and to provide a system of compensation for other persons working on a vessel, including those persons who had been classified as "seamen" under the Federal decisions construing the scope of the Jones Act prior to the enactment of the Longshoremen's Act.

The South Chicago Company case adopts from The Bound Book, 146 F. 160, 164, the ▇▇ following definition:

"When the 'crew' of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board."

The South Chicago Company case held that an employee hired as a "deck hand" on a coal barge was not a member of the crew within the meaning of the Longshoremen's Act, his chief task being to facilitate the flow of coal from his barge to the vessel being fueled by removing obstructions to the flow with a stick. The court stated, 309 U. S. l. c. 260:

"These duties, as the Court of Appeals said, did not pertain to navigation, aside from the incidental task of throwing the ship's rope or making the boat fast, a service of the sort which could readily be performed or aided by a harbor worker. What the court considered as supporting the finding of the deputy commissioner was that the primary duty of the decedent was to facilitate the flow of coal to the vessel being fueled, that he had no duties while the boat was in motion, that he slept at home and boarded off ship and was called each day as he was wanted and was paid an hourly wage. Workers of that sort on harbor craft may appropriately be regarded as 'in the position of longshoremen or other casual workers on the water.' Scheffler v. Moran Towing Co., 68 F. (2d) 11, 12."

The same opinion earlier defines the distinction between those covered by the Longshoremen's Act and those covered by the Jones Act as follows:

"They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and *primarily on board to aid in her navigation*." (Emphasis ours.)

We think the South Chicago Company case is controlling. In the instant case, plaintiff's primary duty was to perform manual labor upon a mat attached to the river bank. He lived on shore and had no duties in connection with the navigation of the barge. He had nothing to do with handling the barge when it was towed up and down the river or in caring for it as a deck hand might while the barge was tied up at its moorings. We think he would come within the definition of a "casual worker on the water" and not a member of the crew.

Plaintiff contends that he was "navigating" the barge because he helped shove it a few feet farther out from the bank when an additional section of the mat upon which he was working was completed. We do not regard a slight shifting of the position of a vessel tied up at her moorings as being navigation. Furthermore, the South Chicago Company case recognizes that incidental duties of an employee which may be connected with navigation will not constitute him a member of the crew.

Plaintiff relies on the case of Woods Brothers Construction Company v. Iowa Unemployment Compensation Commission, 229 Iowa 1171, 296 N. W. 345, in which employees performing substantially identical work were held to be members of a crew of a vessel within the meaning of the Iowa Unemployment Compensation Act. However, that Act was intended to tie in with the Federal Social Security Act, in which the term "crew" had been given a much wider scope through administrative rulings. The cases construing the Longshoremen's Act were deemed not applicable because the court found that it had a "different history and aim than the law we are considering."

Plaintiff cites the case of Norton v. Warner Company, 321 U. S. 565, which construes the Longshoremen's Act and held that a barge employee was a member of the crew of a vessel. However, the employee in question lived on the barge and performed the normal functions of a deck hand such as keeping the barge in repair, putting out navigation lights, and taking the line from the tugboat and accepting orders from the tugboat captain whenever the barge was towed. We think the duties were so dissimilar as to make this case clearly inapplicable.

Plaintiff also cites State ex rel. Kansas City Bridge Company v. Missouri Workmen's Compensation Commission (Mo. App.), 81 S. W. (2d) 986 (St. Louis Court of Appeals), ▮▮▮ where, under substantially identical facts, it was held that the Missouri Workmen's Compensation Act did not apply. However, the opinion, while considering the Jones Act and the Longshoremen's Act, expressly refused to rule as to which act applied. The court considered its opinion in conflict with the opinion of the Kansas City Court of Appeals in McClain v. Kansas City Bridge Company (Mo. App.), 83 S. W. (2d) 132, and transferred the case to the Supreme Court. This court dismissed the

action on the ground that the proper basis for relief by mandamus had not been established since the injured employee had in the meanwhile filed a claim under the Longshoremen's Act, not the Jones Act. 92 S. W. (2d) 624.

In Pfister v. Badgett Construction Company (Mo. App.), 65 S. W. (2d) 137, the Springfield Court of Appeals held that the Jones Act and not the Missouri Workmen's Compensation Act applied to an injury to a workman operating a pile driver on a barge in the Missouri River. The opinion failed to consider the limiting effect of the Longshoremen's Act on the Jones Act and is in conflict with the Supreme Court of the United States in the South Chicago Company case. If the opinion is construed as having the effect of holding that the claimant was a member of the crew so as to come within the restricted scope of the Jones Act, we believe the case is also inconsistent with the opinion of this court in Cape Girardeau Sand Company v. Unemployment Compensation Commission, 353 Mo. 828, 184 S. W. (2d) 605, holding that a workman who operated sand pumping equipment and a derrick on a sand dredge in the Mississippi River was not a member of the crew of a vessel within the meaning of the Missouri Unemployment Compensation Act. On the other hand, the latter case differs from the instant case in that it construed an act having somewhat different objectives from the Jones Act as modified by the Longshoremen's Act.

While we are satisfied that plaintiff could not have recovered under the Jones Act, it might be a close question as to whether his proper remedy was under the Longshoremen's Act or under the Missouri Workmen's Compensation Act.

The opinion of the Kansas City Court of Appeals in the case of McClain v. Kansas City Bridge Company (Mo. App.), 83 S. W. (2d) 132 holds the Missouri Workmen's Compensation Act applicable to a closely analogous situation, but when the case was transferred to the Supreme Court on the ground of conflict with the Pfister case, this court dismissed the appeal on another ground. Thus the question has never been squarely decided by this court. The Federal authorities are not clear. Northern Coal & Dock Company v. Strand, 278 U. S. 142, Employers' Liability Assurance Corporation v. Cook, 281 U. S. 233, and Baizley Iron Works v. Span, 281 U. S. 222, hold the Federal law is exclusive under the circumstances of those cases, but are distinguishable on their facts and involve injuries occurring prior to the enactment of the Longshoremen's Act. On the other hand, Millers' Indemnity Underwriters v. Braud, 270 U. S. 59, which presents a fairly close analogy, points to the application of the Missouri Workmen's Compensation Act. Furthermore, the Supreme Court of the United States denied certiorari in the case of Belk v. Massman Construction Company, 133 Neb. 303, 275 N. W. 76, 303 U. S. 641, which is squarely in point in holding that the Nebraska Workmen's Compensation Act applied.

552

We need not decide in this case whether the proper remedy was under the Longshoremen's Act or under the Missouri Workmen's Compensation Act. That question is not an issue here, nor was it one in the trial court. Plaintiff's theory of recovery is that he was fraudulently deprived of his cause of action which he was entitled to under the Jones Act. We hold he had no cause of action under the Jones Act.

Accordingly, the judgment is *reversed*. All concur.