RHODA A. CHAPMAN, SAMUEL SPURGEON, and JOHN M.
    READER, Appellants, v. THOMAS NEWELL, Executor
    of the Will of S. N. SPURGEON, Deceased.

**Wills:** CEMETERIES : BEQUESTS : STATUTES. The statute authorizing owners
1   of a cemetery to procure the appointment of a trustee with author-
    ity to receive and manage money donated for a permanent fund to
    maintain the same, has no application to public cemeteries; so that
    the fact that a gift to maintain a public cemetery was not made
    in accordance with the provisions of the statute does not affect
    its validity.

**Same:** CHARITABLE USES. The maintenance of a cemetery as a place
2   of public burial, open to all persons alike, is a charitable use;
    and a gift for the purpose of aiding in its maintenance is valid.

**Same:** BEQUEST TO SCHOOL FUND: CERTAINTY OF PURPOSE AND BENE-
3   FICIARIES. A bequest to the permanent school fund of a county
    is not void for uncertainty because there is no such fund specially
    designated by the statute, or because the gift is not to a person,
    corporation, individual or thing capable of accepting it; since a
    charitable gift will not be permitted to fail because of any mis-
    take or ambiguity in describing its beneficiaries or expressing its
    purpose, if from the language of the bequest when construed in
    the light of all the facts the intent of the donor is reasonably
    apparent.

**Same:** CONSTRUCTION OF TRUSTS : EVIDENCE : DESIGNATION OF TRUSTEE.
4   Extrinsic evidence is permissible to aid in the construction of a
    bequest; and it is not necessary to its validity that a beneficiary
    be named; and although no donee or trustee is named, or one
    is named who is incapable of taking or holding the gift for a
    charitable use, a court of equity will not permit the trust to fail
    on that account but will supply a proper trustee.

**Same:** BEQUEST TO PERMANENT SCHOOL FUND : CERTAINTY OF PURPOSE.
5   The statutes of this State provide a scheme of common schools
    and a permanent trust fund for their support commonly known
    and referred to as the "permanent school fund of the county;"
    and a bequest by one, who declares his desire to assist in ad-

vancing the interests of the public schools of his county, to the permanent school fund of such county is not void for ambiguity or uncertainty of purpose.

Same: VALIDITY OF BEQUEST. It is no objection to the validity of a
6 bequest to the permanent school fund of a county that ample provision has been made by law for the support of the public schools.

Same: BEQUESTS: CONSTRUCTION. In the construction of a bequest
7 consideration will be given to all the relative circumstances, both intrinsic and extrinsic, which will aid in giving coherence and clearness to expressions of the testator which might otherwise be obscure.

Same: DESIGNATION OF TRUSTEE. A county is given power by statute
8 to receive a bequest to its permanent school fund; but if this were not so the bequest will not be permitted to fail because of its disqualification in this respect.

*Appeal from Louisa District Court.*—HON. JAS. D. SMYTH, Judge.

MONDAY, MARCH 14, 1910.

AN action to construe the will of S. N. Spurgeon, deceased, and to adjudge void certain bequests and devises provided for therein, and to have property sought to be disposed of by said provisions declared intestate property. The demand was resisted by the executor, and the cause tried to the court upon the will in question and certain agreed facts quoted in the opinion and upon oral testimony. The court dismissed the petition, and plaintiffs appeal.—*Affirmed.*

*E. B. Tucker* and *Wade, Dutcher & Davis,* for appellants.

*C. A. Carpenter, L. A. Reiley,* and *Oscar Hale,* for appellee.

WEAVER, J.—The testator died August 27, 1907, a widower and childless. He had long been a resident of Louisa County and had accumulated property, the amount of which does not seem to have been proven on the trial, but is stated by counsel to be somewhere from $20,000 to $25,000, and so far as shown he was not largely indebted. On May 10, 1902, he executed the will in controversy. It had been prepared for him by counsel and appears to have been drawn according to his directions. The instrument is too long to be incorporated in full in this opinion; but we will quote such portions as are necessary to an understanding of its terms. In an introduction to the instrument, he first speaks of his widowed and childless condition, and states his reasons for not leaving his estate to his collateral relatives. He then proceeds as follows:

I have lived since my youth in Louisa County, Iowa, and have accumulated my property here. I have shared the hardships of pioneer life with those who first settled in Louisa County, and a large number of those early pioneers, who were endeared to me by the warmest ties of friendship, together with a number of my family and relatives, are buried in the cemeteries in Concord and Columbus City townships. I am also under grateful obligation to all my present neighbors and friends of the present generation, who by their uniform kindness and friendship have cheered me in my declining years, and it is my desire to so leave the property that I have accumulated that the friends, both of my youth and old age, may be remembered. In my opinion, no more fitting tribute can be made to the memory of those that are dead than to provide in a measure for preserving and beautifying their last resting place and that there is no better way of remembering the present generation than to assist so far as I can, in advancing the interest of the public schools of this county. Therefore it is my desire that after the expenses of my last sickness and funeral and administration upon my estate are paid the property be disposed of in the following manner:

First. I give, devise and bequeath the sum of two thousand dollars ($2,000) to be held perpetually in trust and invested as hereinafter set forth, and the interest or income thereof to be paid to the trustees or managing officers of Columbus City cemetery, in Louisa County, Iowa, yearly; the interest or income from said investment to be used by said trustees in improving, caring for and beautifying said burial grounds.

In the second and third paragraphs he bequeaths, upon like terms and conditions, the "sum of $1,000 each for the benefit of Indian Creek cemetery and Fredonia cemetery," both in Concord township in Louisa County. The eighth or residuary clause of the will is as follows: "All the rest and remainder of my estate including the proceeds of the land sold, and after the payment of the legacies above named I give, devise and bequeath absolutely and without reservation to the permanent school fund of Louisa County, Iowa." In subsequent paragraphs he provided for the appointment by the court of a trustee, who shall take charge of the bequests made in the first, second, and third paragraphs, which trustee shall lend the same on the security of Louisa County farm lands or, in certain contingencies, upon like security in adjoining counties, or investment may be made in safe bank stock. He also directs that the trustee make a yearly report of his trust to the district court, and limits the amount of compensation he shall receive for his services.

The plaintiffs deny the validity of the first, second, third, and eighth paragraphs above quoted, and insist that as to the moneys and properties which the testator sought to devote to the benefit of the cemeteries named and the bequest to the permanent school fund of the county he must be held to have died intestate. The grounds of these contentions will be more specifically noted later in this opinion.

I. Plaintiffs allege that they are collateral heirs of

the testator who are entitled to share in any intestate property left by him. This allegation appears to be covered by the denials of the answer, and we find no evidence or concession by which the relationship is established. However, as no point is made by appellee upon this apparent failure of proof, we shall consider the appeal upon its merits.

II. No claim is made that the testator was of unsound mind, or that the will was procured by undue influence. Its due execution is not denied, and it has been properly probated. The bequests for the benefit of the several cemeteries named (all of which are of a public character) are said to be void: First, because the will in this respect ignores or fails to conform to the statute (Code Supp., title 3, chapter 5a); and, second, because it undertakes to create a perpetuity in violation of Code, section 2901. We think neither objection can avail. As to the first, the statute relied upon does no more than to authorize the "owner or owners of a cemetery to procure the appointment of a trustee who shall be authorized to receive, invest, manage, and control moneys given by way of a permanent fund or endowment, the income of which shall be applied to the use and maintenance of such cemetery." The effect of the statute is to permit perpetual trusts or endowments for privately owned cemeteries. It has no application either in terms or by inference to public cemeteries, the maintenance of which is in our judgment a charitable use and therefore within the recognized exceptions to the operation of the statute against perpetuities.

1. WILLS: cemeteries: bequests: statutes.

Lord Camden defines a "charitable gift" to be "a gift to general public use which extends to the poor as well as to the rich." *Jones v. Williams,* Ambl. 651. See, also, *Coggeshall v. Pelton,* 7 Johns. Ch. (N. Y.) 292 (11 Am. Dec. 471). It is "whatever is given for the

2. SAME: charitable uses.

love of God or for the love of your neighbor in the catholic and universal sense." *Vidal v. Girard,* 43 U. S. 137 (11 L. Ed. 205). Something done or given for the benefit of our fellows or of the public. *Knight's Estate,* 159 Pa. 500 (28 Atl. 303). Any general public use extending to all, rich or poor, is not void, although in some forms it creates a perpetuity. *Piper v. Moulton,* 72 Me. 159. The statute, 43 Eliz., defining charitable uses, enumerates, among others, the relief of the poor, the promotion of education, the repair and maintenance of public buildings and works, including improvement of ports, havens, bridges, and other enterprises of a public character. And at common law any purpose was construed to be charitable which was within the principle and reason of that statute, though not expressly named in it, and the term is given even a wider and more comprehensive meaning in modern times than was recognized in the reign of Elizabeth. *Jackson v. Phillips,* 14 Allen (Mass.) 551. In *Donohugh's Appeal,* 86 Pa. 306, "charity" is defined as something done out of good will, benevolence, and a desire to add to the happiness or the improvement of one's fellow beings. In *Ould v. Hospital,* 95 U. S. 303 (24 L. Ed. 450), a charitable use, where neither law nor public policy forbids, is said to be "almost anything that tends to promote the well-doing or well-being of social man." Other courts have said the real test whether an enterprise is charitable is its purpose, and, if its purpose is to make profit, it is not charitable. *Long v. Rosedale* (C. C.) 84 Fed. 135. Gifts for the improvement of a city, a devise to bring water into a town, and to build a town hall have been held to be charitable. *Drury v. Natick,* 10 Allen (Mass.) 178; *Jackson v. Phillips,* 14 Allen (Mass.) 552.

That the providing and maintenance of a suitable place for the burial of the dead is one of public use and benefit is not open to question. A decent respect for the

memory of the dead is a universal characteristic of civil-
ized society.   No depth of misfortune or poverty can
deprive one of its members of the right to a grave, and a
rule of law which would deny a generous testator the
right to establish a trust for such uses, and yet uphold a
trust to pave a street, maintain waterworks, improve navi-
gation, build bridges, maintain churches and hospitals,
would lack the elements of both reason and consistency.
Upon the principle that a trust for the maintenance of the
donor's own burial lot is not in the nature of a public
use or public charity, some courts have permitted avari-
cious descendants to transmute the graves of their ancestors
into cash.   See cases cited in 5 Am. & Eng. Ency. Law
(2d Ed.) ; but this rule is not universally accepted.
There have also been suggestions that cemeteries held by
private or corporate ownership are not proper beneficiaries
of such trust; but that qustion is not now before us.   The
greater weight of authority tends to sustain trusts for
the maintenance of cemeteries which are provided for or
given to public use.   *Webster v. Morris,* 66 Wis. 366
(28 N. W. 353, 57 Am. Rep. 278) ; *Sheldon v. Stock-
bridge,* 67 Vt. 299 (31 Atl. 414) ; *Ralston's Estate,* 1
Chest. Co. Rep. (Pa.) 482; *In re Vaugh,* Chancery Div.
187; *Hopkins v. Grimshaw,* 165 U. S. 352 (17 Sup.
Ct. 401, 41 L. Ed. 739) ; *Mannix v. Purcell,* 46 Ohio St.
102 (19 N. E. 572, 2 L. R. A. 753, 15 Am. St. Rep.
562), 6 Cyc. 618, 900.   And the case at bar is well within
this rule, which commands our approval.

Adhering to the law as stated, it follows that the first,
second, and third paragraphs of the will under considera-
tion are not void.   It may also be added that, even if
they should be declared void, the amount or sums of
money thus released would fall into the residuum of the
estate and pass under the eighth paragraph to the school
fund, a bequest which, as hereinafter indicated, we hold
to be valid.

III.    The validity of the eighth paragraph of the will, which gives the bulk of the estate to the permanent school fund of Louisa County, is disputed on the ground that there is no such fund, and that the gift is not to any person, corporation, individual, or thing capable of accepting it, and is therefore void for uncertainty.    The argument on the part of appellant is largely devoted to the proposition here stated, and much reliance is placed on the thought that there is no such thing as "the permanent school fund of Louisa County," and that the gift is therefore hopelessly meaningless and indefinite and can not be aided or validated by judicial construction.    It may be conceded that the statute has not created a fund specifically designated as a "county permanent school fund." But no rule is more firmly established than that a charit-able gift is not invalidated because of any mistake or ambiguity in expressing its purpose or describing its beneficiaries, if from the language of the will, construed in the light of all the facts and circumstances surrounding the devise or bequest, the intent of the donor is reasonably apparent.

*3. Same: bequest to school fund: certainty of purpose and beneficiaries.*

To aid in such construction, extrinsic evidence of the circumstances is always admissible.    *Johnson's Estate,* 141 Iowa, 109.    It is well settled that the name of the beneficiary need not be mentioned in the will creating the trust.    See cases collected in 5 Am. & Eng. Ency. Law (2d Ed.) 917, and 6 Cyc. 935.    So, also, though no donee or trustee be named, or if one be named who is incapable of taking and holding the gift for charitable uses, the trust will not be allowed to fail, as a court of equity will supply a proper trustee.    *Johnson v. Mayne,* 4 Iowa 180; *Eliot's Appeal,* 74 Conn. 586 (51 Atl. 558); *Klumpert v. Vrieland,* 142 Iowa, 434.

*4. Same: construction of trusts: evidence: designation of trustee.*

Starting with these fundamental rules in view, our

first inquiry is whether there is any real ambiguity or uncertainty as to the purpose to which the testator sought to dedicate his estate. Is the reference to the "permanent school fund of Louisa County" so indefinite, uncertain, or meaningless that the gift must fail? The laws of this state provide a scheme for the establishment and support of a system of public schools whereby every city, town, village, and country neighborhood is or may be supplied with facilities for the education of its children in the elementary branches of learning. In aid of this purpose, the general government at an early date made liberal grants of land, and the moneys derived from this source, increased by others derived from escheats, have been preserved as a permanent trust fund, the interest and income from which are applied to the support of our common schools. Code, section 2838. While it is a state fund in the sense that it has been created by the authority of the state which retains supervision over it, to the end that it be not lost or impaired, yet the state does not attend to its management, control, or investment, but apportions it "among the several counties." Code, section 2838. The board of supervisors in each county "hold and manage the securities" given to the school fund in its county. Code, section 2838. Actions for or in behalf of the fund are brought for its use by the county attorney in the name of the county. Losses arising in its management are paid by the county. It remains permanently with the county and in the management of the board of supervisors though, if it be found impracticable to keep it all invested in loans, such unemployed portion may be transferred to another county (Code, section 2856), and any excess of interest over the proper share of the county in the annual or semi-annual apportionment (which is made on the basis of school population) is accounted for to the state. Code, section 2847. Observing these facts, it is a very

*5. SAME: bequest to permanent school fund: certainty of purpose.*

natural thing that one should speak of that portion of the permanent school fund which has been apportioned to the county, and which is held and managed by the county officers, and is invested and collected in its name, as the "county permanent school fund" or the "permanent school funds of the county." Indeed, we think it a matter of common observation and common knowledge that such is the usual, if not universal, form of expression among our people in referring to this feature of our common-school system. In the light of this situation, we must read the will which is here in controversy.

There is a permanent school fund in Louisa County, held and managed by its board of supervisors, and the interest therefrom is applied to the support of the common schools of that county. When, therefore, the testator, an old resident of the state and county, familiar in the ordinary way with its system of school support, declares his desire "to assist in advancing the interests of the public schools of this county," and in pursuance of such desire proceeds to make a devise "to the permanent school fund of Louisa County," can there be any reasonable question concerning the purpose of his benefaction? It would be the sheerest affectation for the court to express any doubt on the subject. What he intended, and what he said in so many words was to assist in promoting the interests of "the public schools of this (Louisa) County." To that end he declares his gift to the "permanent school fund of Louisa County." This devise does not attempt to treat the "permanent school fund" as being in itself a person or corporation capable of receiving and enjoying the gift, but it is as if the testator had said, "I devise and bequeath the remainder of my estate to increase the permanent school fund of Louisa County," or, "I give and bequeath to Louisa County for a permanent school fund." If, for instance, the will had contained a devise "to the Schoolhouse Fund of the Independent School District of Wapello

in Louisa County," there would not be the slightest hesitation on the part of any lawyer in saying that this was a good devise to the independent district for the use or upon the trust therein expressed. The trust created by this will can not, therefore, be avoided for any ambiguity or uncertainty as to its purpose. If that purpose be a lawful one, the trust will not be allowed to fail because of any lack of precision in the terms in which the gift is expressed. The court will not stop to consider whether the gift is a wise one. The intestate's property was his own, presumably the product of his own labor and management, and it was his right to select the object and purposes to which it should be applied after his death. He was under no legal obligation to provide for his collateral relatives, and, whatever he did with his estate, they were not wronged. His will has been duly probated. Its provisions are clear, and they must be effectuated unless the gift or devise to which objection is made is found contrary to some statute or settled principle of law. That a devise to promote public interests is valid is not open to dispute. The courts have sustained gifts and trusts for public improvements (*Jones v. Williams,* Amb. 651); to aid in payment of the public debt (*Newland v. Attorney General,* 3 Mer. 684); for a public park (*Bartlett's Case,* 163 Mass. 509, 40 N. E. 899); for the support of free public schools in a certain district (*John's Will,* 30 Or. 494, 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242); to pay salaries of additional school teachers (*Webster v. Wiggin,* 19 R. I. 73, 31 Atl. 824, 28 L. R. A. 510); for erection of a courthouse (*Stuart v. Easton,* 74 Fed. 854, 21 C. C. A. 146); the drainage of land (*Henry County v. Winnebago,* 52 Ill. 454); and for many other similar purposes. Quite in point, see, also, *Heuser v. Harris,* 42 Ill. 425, and *Skinner v. Harrison,* 116 Ind. 139 (18 N. E. 529, 2 L. R. A. 137).

As will be seen from the foregoing precedents, it con-

stitutes no reason for holding a gift void that it is made for a purpose for which other and perhaps ample provision has been made by law, and, if a testator conceives that his estate may be usefully employed in reducing the public burdens or increasing the amounts provided by law for any specific public benefit the law places no ban upon his assistance to that end. Indeed, the validity of such gifts is recognized by our own statutes. Code, section 2903, and Code Supp. section 740.

6. SAME: validity of bequest.

Counsel argues that to uphold the gift involves a change in the will as made by the testator. Not so. Language is construed by the courts not to force upon it a meaning the testator did not intend, but to give force and effect to his meaning. And to accomplish that end no rule is more just or more frequently applied than that which permits and requires the court to consider all relevant circumstances, both intrinsic and extrinsic, which will help to give coherence and clearness to expressions which might otherwise be obscure. For an illustrative example, see *Skinner v. Harrison,* 116 Ind. 139. There the testator made a devise to "Harrison township" to establish a fund the interest from which should be used for the support of the common schools. Now it happened that in the state of Indiana there were at that time no less than twenty-two townships named "Harrison," and each constituted both a civil township and a school township, and each a corporation capable of holding property for appropriate public purposes. Without extrinsic evidence it was impossible to know who was the intended beneficiary. But the fact that the testator resided in a particular Harrison township being made to appear, the court held that the devise was neither ambiguous nor uncertain, and that the clear intent of the testator was to make the gift to the school town-

7. SAME: bequests: construction.

ship of his residence.   See, also, *Johnson's Estate,* 141 Iowa, 109; *Le Fevre v. Le Fevre,* 59 N. Y. 434.

In their reply argument appellants repeat with much emphasis and apparent confidence that, even conceding all others points be ruled against them, there is an insurmountable obstacle to the upholding of the will in the want of power in Louisa County to receive such bequest. As we have seen, such power is expressly given the county by statute (Code Supp., section 740), which also provides for the appointment of trustees by the court whenever it is necessary to give due effect to the will.   Moreover, even in the absence of such statute, and in the absence of such power to accept and administer such trust, the purpose being lawful, the gift will not fail because of the disqualification of the trustee, for the court will intervene to supply one. *Vidal v. Girard,* 43 U. S. 127 (11 L. Ed. 205); *Sheldon v. Stockbridge,* 67 Vt. 299 (31 Atl. 414; *McDonough v. Murdoch,* 56 U. S. 367 (14 L. Ed. 732).

8. SAME: designation of trustee.

The conclusion is inevitable that the eighth paragraph of the will of S. N. Spurgeon is valid and enforceable.

We are not called upon to consider the manner in which the gift shall be administered.   Code Supp., section 740, gives to the county authority to receive gifts and to administer the same through its proper officers according to the terms and conditions on which such gifts are made.   Those two trusts, like all others, are subject to the supervision of the court, which will make such orders and give such directions as may be necessary to make certain that the substantial intent of the testator shall be faithfully observed.

The decree appealed from is correct and must be *affirmed.*