In the Matter of the Accounting of Anna G. Ferguson, as Executrix of Rose M. Ferguson, Deceased.

Surrogate's Court, Broome County, April 4, 1949.

*Warren G. Farrington* for executrix, petitioner.

*Murray I. Dann,* special guardian for Jeanne B. D. Broom and another, infants, respondents.

PAGE, S. The question of construction presented is in relation to paragraph " Eighth " of the will, reading as follows: " Eighth. I give and bequeath to my daughter, Anna G. Ferguson, all of my stock in the Endicott-Johnson Corporation of Endicott, New York and all of my right, title and interest in and to a *bond and mortgage* which I hold on the Olmstead Farm in Milford Center, Town of Milford, Otsego County, New York." (Italics supplied.)

Testatrix never had such a bond and mortgage. At the will's date, she held a deed and also an assignment by the vendor in a land contract for the sale of the " Olmstead Farm ". She received annual installment payments of interest and principal from the vendees until she died. The balance of principal then remaining unpaid was $3,000.

The learned special guardian contends that the beneficiary named in paragraph " Eighth " has no standing to claim anything different than the will plainly provides. His point as to this is, " Where there is no ambiguity or uncertainty in the words used in a will in describing property, parol evidence may not be adduced to identify the property or supply a correction or omission." He cites several cases, typical of which are *Matter of Lyden* (64 Misc. 597) and *Matter of Keleman* (126 N. Y. 73).

The *Lyden* case (*supra*) held that the court would not consider cutting down a bequest of $1,000 to $200 because of testimony of the two executors that they were present when the will was executed and heard the testatrix then say that she wanted this particular bequest to be $200. Of course, it is elementary that the plain terms of a will cannot be varied by parol. *Matter of Keleman* (*supra*) is merely illustrative of this principle of construction. As long as the provisions are clear and unequivocable, extrinsic evidence is irrelevant.

Courts cannot recast wills. Arbitrary variations cannot be evolved by judicial fiat. An interested party may not adduce evidence dehors the will's clear language by which it might or could be claimed that any alteration of any one of the testamentary provisions would be justified.

However, courts recognize the ever-present possibility of human error. In donning his judicial robe, the judge does not (or should not) doff his common sense. Very unlike their uniformly strict dealing upon probates with cases of defective formal observances, or in respect to provisions which only by the most remote possibility might or, conceivably, could violate the statutes against " perpetuities ", courts are lenient and

liberal in construction cases. In cases of ambiguity, they are governed by a decipherment of testamentary intent as spelled out from circumstances surrounding the will's execution.

But, despite this judicial attitude, extrinsic evidence is always inadmissible until it is first shown that there is an ambiguity inherent in the testamentary words. For example, before there can be any question as to an alleged misdescription of a gift or beneficiary, it must be shown that there, in fact, is an ambiguity. The ambiguity may be patent or latent. Here the provision reads clearly enough. There is no patent ambiguity. The ambiguity, if any, is latent. Such an ambiguity can never be brought to the surface until some relevant extrinsic consideration having a bearing upon it is shown.

Pursuant to its recognition of the proneness of humanity to commit errors, the court will always allow an interested party, if he can, to establish a fact or set of facts which tend to indicate a latent ambiguity. For instance, as in the present case, when the actuality of the existent land contract is brought into juxtaposition with the illusory bond and mortgage, we perceive such a situation. Then, that which was latent becomes patent.

The presence of the contract in conjunction with the absence of the mortgage provides the foundation for an inquest as to testamentary intent. Assuming as, in the absence of any indication to the contrary, we must, that the testatrix was not joking, but endeavoring to express a serious intent, the resolution here is self-evident. But, also, a survey of the will as a whole and the testamentary scheme thereby disclosed confirms the existence of a latent ambiguity and indicates its solution. It is clearly obvious that the testatrix' design was to benefit her two " daughters " on a basis of substantial equality. (Anna G. Ferguson was her daughter and Dora B. Davidson was her stepdaughter.) A construction throwing the land contract proceeds into the residuary portion of assets, or into intestate devolution, would, *pro tanto,* upset the testatrix' contemplated equality of treatment of these two beneficiaries. It seems unnecessary to go into any further confirmatory considerations to quite adequately support the conclusion that the term, " land contract ", must be substituted for the term, " bond and mortgage ", if the testatrix' purpose is to be honored and upheld.

Some of the New York cases which show widely varying circumstances under which miscarriages of testators' intent have been averted and their wishes effectuated, all within the framework of the testamentary design, are:

*Matter of Cartledge* (118 Misc. 131, 133, affd. 203 App. Div. 899, affd. 236 N. Y. 515, wherein a general devise by a testatrix who died seized of no real property was adjudicated to operate as a bequest of all her stock in Cartledge Realty Company. In this case Surrogate Foley stated: "It is the substance of the attempted gift with which we are chiefly concerned, not the words in which it was attempted to be given").

*Matter of Kheel* (52 N. Y. S. 2d 820, wherein a bequest of non-existent preferred stock was held to convey existent common stock of the same corporation).

*Matter of Schreier* (153 Misc. 711, in which a specific devise of real property carried title to testator's undivided one half, plus his equity as mortgagee).

*Matter of Dibble* (176 Misc. 897, in which a devise of a farm, not owned by testator, carried bequest of farm mortgage).

*Matter of Walsh* (135 Misc. 588, in which a devise of lots 59–61 carried lots 60 and 61).

*Matter of Brown* (118 Misc. 300, in which a bequest of non-existing " all my ten thousand dollar Liberty Bonds " carried ten bonds of $1,000 each).

*Matter of Bush* (124 Misc. 674, in which a bequest of 200 shares of Mackay Companies not owned by testator, in view of surrounding circumstances, carried 200 shares in Charlton Realty Company).

All these cases are illustrative of resolutions of latent ambiguities, as are also a number of cases which could be cited, identifying latently ambiguous beneficiaries.

But, it is to be noted, that none of these cases assumes to allow that a latent ambiguity can be developed by permitting the preliminary circumstance, accepted as a sufficient basis for injecting the issue of ambiguity, to consist of an alleged declaration of a testator at variance with a clear provision written in the will. That, of course, would be far too dangerous. It would throw the door open to fraudulent operations by unscrupulous interested parties. The possibility of " strike " cases is already ample. This distinguishes *Matter of Lyden* (64 Misc. 597, *supra*) and all the other authorities cited by respondent.

The testatrix' obvious misnomer of the second chose in action intended to be bequeathed to her daughter, Anna G. Ferguson, will be corrected in the decree by construing the paragraph as if it contained the term " land contract " instead of " bond and mortgage ".

Settle and enter decree, including construction of paragraph " Eighth " of the will, accordingly.