CARRIE WIDNEY et al., appellants, v. CARL J. HESS, administrator c. t. a., et al., defendants-appellees; CARROLL, IOWA, LODGE No. 1637, B. P. O. E., et al., intervenors-cross-petitioners.

No. 47781.

(Reported in 45 N.W.2d 233)

December 12, 1950.

Rehearing Denied February 9, 1951.

Welch & Welch, of Logan, for Carrie Widney et al., plaintiffs-appellants.

Leighton & Wederath, of Carroll, for Cancer Prevention Society, intervenor-appellant.

Arthur N. Neu, of Carroll, for Carl J. Hess, administrator, defendant-appellee.

White & Bruner, of Carroll, and Don G. Mullan, of Odebolt, for American Cancer Society, Inc., intervenor and cross-petitioner, appellee.

Reynolds, Meyers & Tan Creti, of Carroll, for Elks Lodge, cross-petitioner, appellee.

SMITH, J.—Roswell D. Johnston, late of California but a former resident of Iowa, died leaving three holographic instruments, dated, respectively, April 15, 1946, December 13, 1946, and July 26, 1947. They had been admitted to probate in California and on November 5, 1947, the probate court of Carroll County, Iowa, in ancillary proceedings, admitted all three as the last will and testament of decedent, who owned real estate in Iowa. An administrator with will annexed was appointed.

This suit is brought by some thirty named plaintiffs on behalf of themselves as heirs and of various other unnamed but described persons and groups alleged to be blood relatives and next of kin of decedent.

Defendants are the administrator c. t. a. and various individuals and organizations named in the instruments as beneficiaries. There was intervention by three organizations claiming to be beneficiaries.

Plaintiffs claim: (1) None of the three papers is valid as a will because they are not executed and witnessed as required by Iowa statute, and because section 633.49, Code of 1950 (which

purports to allow probate of wills executed in foreign states if executed in accordance with statutes of such states) is unconstitutional and void; and (2) in any event the residuary estate is intestate because of ambiguity in designation of residuary beneficiary.

The trial court held the third will (of July 26, 1947) valid and that it revoked all previous wills, including those dated April 15 and December 13, 1946, and set aside the probate of the latter two; dismissed plaintiffs' petition and the intervention of Cancer Prevention Society, Inc.; held the Elks Lodge of Carroll, Iowa, otherwise known as Carroll, Iowa, Lodge No. 1637, intervenor and cross-petitioner, to be a devisee, but under stipulation reserved jurisdiction for later determination as to the extent of property it is to receive; held defendant Katherine Wilkes a legatee to receive $1000; and decreed American Cancer Society, Inc., intervenor and cross-petitioner, to be residuary legatee. Plaintiffs and Cancer Prevention Society, Inc., intervenor, appealed.

The instrument dated April 15, 1946, directed the sale of certain Iowa real estate, provided three $1000 bequests to individual legatees, devised one real estate item to "Carroll Elks Lodge", directed payment of debts and certain burial arrangements, named Arthur Neu as attorney and administrator and "National Cancer Institute" as residuary beneficiary, and "My dog to be given to Joe McClelland, Spirit Lake, Iowa."

The second instrument, dated December 13, 1946, gave "Peggy Kent, true name Edna Schaffer" $150 a month for life, "at her death the remainder of my estate to go to the Society for the prevention of Cancer." It names the same attorney and Carroll County State Bank as administrator. (Peggy Kent was one of the $1000 legatees named in the first instrument.)

The third instrument, dated July 26, 1947, is as follows:

"My last *will*:

I herewith leave the corner where the oil station is to the Elks Lodge—Carroll, Iowa to build a club house on. One thousand dollars to Katherine Wilkes—California Edison Bldg.— L. A. Balance of Estate to the National Cancer Fund.
                                   **Roswell D. Johnston.**"

346

■ I. It is of course true none of these instruments was witnessed as required by section 633.7, Iowa Code, 1946. They were however admittedly in decedent's handwriting and were eligible to probate under California law.

Section 633.49, Iowa Code, 1946 and 1950, provides:

*"A last will and testament executed without this state, in the mode prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state, provided said last will and testament is in writing and subscribed by the testator."*

Plaintiffs contend this section is for various reasons unconstitutional and void; also that it was not intended to change the common-law rule for devolution of title to real estate, citing Lynch v. Miller, 54 Iowa 516, 6 N.W. 740, and In re Estate of Barrie, 240 Iowa 431, 35 N.W.2d 658, 9 A. L. R. 2d 1399, but was intended merely "to establish the validity of a foreign will free from collateral attack unless and until it would be contested and set aside in a direct proceeding as authorized by law and within two years from the date" of the order of probate.

II. This last contention manifestly cannot prevail. It ignores the explicit language of the statute itself, especially the last clause thereof, which can be read and construed in connection with the other sections of our will statutes without difficulty. It merely creates an exception to the general rule, and applies only to wills executed without the state. Lynch v. Miller, supra, was decided long before Code section 633.49 was enacted. The decision in In re Estate of Barrie, supra (240 Iowa at page 439) impliedly concedes the validity of the statute as applied to the act of creating a will but denies that it applies to the act of revocation as any part of the act of execution. Neither case supports plaintiffs' argument.

III. Plaintiffs argue the statute (section 633.49) is void because not validly enacted in accordance with the mandate of section 29, Article III, of the Constitution of Iowa which is as follows:

*"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."*

Section 633.49 is identical with section 3309 of the Code of 1897, enacted during the Extra Session of the Twenty-sixth General Assembly. A legislative movement to overhaul the entire statutory structure commenced in the Twenty-fifth Session. A commission was appointed to study the matter which prepared and printed a proposed new Code with twenty-six titles, each constituting a separate bill, in substantial compliance with chapter 115, Acts of the Twenty-fifth General Assembly. See Volume 3, Iowa Code Annotated, page 135 et seq., "An Outline of Iowa Codes Compilations and Revisions" by Alan Loth. Mr. Loth reaches the conclusion, with which we agree, that the Code of 1897 "is a true Code, the original legislative enactment, superseding all prior statutes of a general nature."

IV. The history of section 3309 of the Code of 1897 is painstakingly traced in the record here. The exact text of the section first appeared in the House, March 15, 1897, as a proposed amendment to Senate File 72. It was offered and adopted as section 40, chapter 2 of that bill. On March 26, 1897, the Senate accepted the amendment in accordance with the recommendation of the conference committee.

This does not mean that at this point Senate File 72, or section 40 of chapter 2 thereof was enacted. Section 40 was merely made a part of chapter 2 of Senate File 72 to be acted on later. Senate File 72 bore the title "AN ACT to revise, amend and codify the statutes in relation to the Estates of Decedents," and bore that title when later enacted as Title XVII (with section 40, chapter 2, thereof as section 3309) of the new Code.

Plaintiffs say that section 40 of chapter 2, thus incorporated into Senate File 72 (later to become section 3309 of Title XVII) was the only "section" that had no prior legislative history. That seems to be literally true but there were new provisions added to other sections, e.g., see and compare sections 3274 and 3276, respectively, Code of 1897, with corresponding sections 2326 and 2329, 2330 of the Code of 1873.

Plaintiffs argue that section 3309 had no title "but was simply offered as an amendment to Title XVII and not as a bill to amend Title XVII or any section or chapter thereof." The argument confuses the appearance and offer of the section as an amendment to Senate File 72, with the final action on the bill after it contained section 40, chapter 2, which became section 3309.

■■ V. We have then to determine whether the title, "An Act to revise, amend and codify the statutes in relation to the Estates of Decedents" was sufficiently broad to cover section 3309 as a part of the bill. Plaintiffs expressly disclaim any contention that the title was insufficient as to other sections of the bill.

Their position is inconsistent and untenable. After section 40, chapter 2 was added to Senate File 72 it was just as much a part of the bill as was any other section. Ninety days after passage Title XVII became a part of the statutory law, not because any part of it had been a part of the Code of 1873 but because it was duly enacted as a part of the Code of 1897.

Was the title to Senate File 72 sufficient? We think it clearly was. In the first place (but not of controlling importance here) for the purpose of a constitutional provision such as is involved here a codification or revision does not relate to more than one subject, and a title expressing that subject is not insufficient for failure to specify each subject to which the statutes, as revised, relate. 59 C. J., Statutes, section 376, page 798, section 483, page 889; 50 Am. Jur., Statutes, section 203.

But of decisive importance here, this court has always construed section 29 of Article III to the end that one Act may embrace all matters "reasonably connected" with the subject expressed in the title. Burlington and Summit Apartments v. Manolato, 233 Iowa 15, 18, 7 N.W.2d 26, 144 A. L. R. 251; State v. Talerico, 227 Iowa 1315, 1322, 290 N.W. 660. This rule was early embedded in our decisions in construing and applying a similar provision in an earlier Constitution. Santo v. State of Iowa, 2 (Clarke) Iowa 165, 209, 63 Am. Dec. 487.

In Fevold v. Board of Supervisors, 202 Iowa 1019, 1034, 210 N.W. 139, 145, we said:

"It is the uniform rule that this constitutional requirement is not to be given a narrow or limited construction. It is not intended to prohibit the writing in one bill of any number of provisions having one general object, fairly indicated by the title; and it is not necessary that the title shall be an index of the details of the act, nor that every provision of the several sections of the statute be enumerated in the title." See also State v. Cowen, 231 Iowa 1117, 1131, 3 N.W.2d 176; Independent School Dist. v. Iowa Employment Sec. Comm., 237 Iowa 1301, 1312, 25 N.W.2d 491; Knorr v. Beardsley, 240 Iowa 828, 856, 857, 38 N.W.2d 236, 252.

Title XVII (Senate File 72) had five chapters, the respective chapter headings being as follows: Chapter 1, "Of the Probate Court"; chapter 2, "Of Wills and Letters of Administration"; chapter 3, "Of the Settlement of Estates"; chapter 4, "Of the Descent and Distribution of the Intestate's Property"; and chapter 5, "Of Accounting and Miscellaneous Provisions".

Section 3309 is found in chapter 2 along with the other provisions concerning the manner of executing wills. Its content is germane to the title which the bill carried, just as are the contents of various other sections of the chapter which prescribe the manner of executing wills. They all relate to the subject expressed in the title which the bill, Senate File 72, carried—"An Act to revise, amend and codify the statutes in relation to the Estates of Decedents."

Plaintiffs properly argue "our statute of wills supersedes the common law." But they seem to assume that because section 40 of chapter 2 of the bill (later codified as section 3309 of chapter 2 of Title XVII of the Code) was new matter, it would have to have some special title. They say "How can it be said section 633.49 had any title?" We answer—it was a part of Senate File 72, and "properly connected" with the title to that bill. We find no authority for holding that because it constituted "new matter" it required any special title, different or in addition to the title carried by the bill of which it was made a part.

It is argued that the title to Senate File 72 "gave no indication that holographic and unwitnessed wills * * * would be considered effective * * *." Neither does the title give any ex-

350

press indication that other modes of execution of wills would be provided. But the subject of "estates of decedents" includes testate as well as intestate estates.

We have said in too many cases to require restatement now that the title needs only to be general and broad enough *"to include"* the subject matter, or, in other words, that the subject matter needs only to be reasonably germane. State v. Fairmont Creamery Co., 153 Iowa 702, 714, 133 N.W. 895, 42 L. R. A., N. S., 821. The title is sufficient if it answers as a key to the subject matter of the Act. State v. Fairmont Creamery Co., supra; State v. Hutchinson Ice Cream Co., 168 Iowa 1, 7, 147 N.W. 195, L. R. A. 1917B 198. "The constitution requires the subject embraced in the act—not matters properly connected therewith—to be expressed in the title. We have uniformly held this constitutional provision should be liberally construed so one act may embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto." Independent School Dist. v. Iowa Employment Sec. Comm., supra, at page 1312 of 237 Iowa, page 498 of 25 N.W.2d.

In the instant case we find no incongruity. The subject-matter of section 3309 (now section 633.49) comes clearly within the broad designation given the entire bill. It is a statute "in relation to the Estates of Decedents."

VI. Plaintiffs concede in argument "that if a sufficient title had been given to section 633.49, such law could have been validly enacted." That should be a sufficient answer to their next proposition that it violates section 6, Article I, of our State Constitution which requires that "All laws of a general nature shall have a uniform operation."

Their argument on this latter point is that section 633.49 "grants privileges to nonresidents which do not equally belong to all citizens." The argument misreads section 633.49. It does not classify testators as residents and nonresidents. It contains no language limiting its application to nonresidents. So far as its terms are concerned a resident, sojourning in a foreign state or country, could draw a valid will by conforming to the law, "either of the place where executed or of the testator's domicile."

We may say in passing, however, we see no constitutional objection to such a classification so far as the subject of wills

is concerned. A nonresident owner of Iowa land might well be relieved of the duty of acquainting himself with Iowa requirements in devising his Iowa real estate. In In re Estate of Anderson, 166 Iowa 617, 623, 147 N.W. 1098, 1100, 52 L. R. A., N. S., 686, this court, in discussing the question of statutory discrimination against nonresident beneficiaries in the matter of assessing inheritance tax, said: "The statute may well be construed as regulating the transmission of the property of deceased persons, and *.* * neither the unwritten law nor the Constitution prohibits discrimination between citizens and foreigners in these respects."

But addressing ourselves to the real situation here we do not hesitate to hold there is no violation in uniformity of operation by section 633.49. It creates a classification that is entirely reasonable and not arbitrary. It recognizes that application of the common-law principle of lex loci rei sitae to transfers of real estate by will tends to create confusion. The common-law rule, originally aimed at situations arising in different countries, is something of an anomaly under modern conditions in this country as between states. There is no constitutional objection to its abolition by statute.

Furthermore, we said in Berg v. Berg, 221 Iowa 326, 335, 264 N.W. 821, 826: "The classification adopted may be inaccurate, unscientific, and even unjust, but that does not demonstrate that it is purely arbitrary." Of course there is nothing arbitrary or discriminatory in the operation of Code section 633.49. It purports to apply to every will "executed without this state, in the mode prescribed by the law, either of the place where executed or of the testator's domicile." The requirement of uniformity is clearly not violated.

Many years ago the Maryland court said, in a case involving a similar statute:

"It must be conceded that at common law, and as a general principle of international comity, the lex loci rei sitae governs the formal execution, validity, etc., of wills of real estate, but it cannot be denied that a State can alter the general rule and provide by statute that such a will may be valid to pass real estate, if executed according to the laws of the place of its

execution." Lindsay v. Wilson, 103 Md. 252, 265, 63 A. 566, 2 L. R. A., N. S., 408.

The text of 68 C. J., Wills, section 397, page 716, announces the rule of the Maryland case. We think it sound.

We conclude section 633.49 is valid, being properly enacted and not in violation of section 6, Article I, of the State Constitution.

VII. Plaintiffs insist that even though the constitutionality of section 633.49 be upheld, the residuary clause of the will is void for ambiguity and that the residuary estate is therefore intestate property. Intervenor and cross-petitioner Cancer Prevention Society of Los Angeles, California, claims that *it* should be held to be the residuary beneficiary referred to in the will as "National Cancer Fund." It gave notice of appeal but no brief and argument was filed on its behalf and we assume its appeal was abandoned.

The language of the residuary clause is latently ambiguous in that it is shown by extrinsic evidence that there is no such organization as "National Cancer Fund." Latent ambiguity is usually discovered by use of extrinsic evidence. Palmer v. Albee, 50 Iowa 429; Stoffel v. Stoffel, 241 Iowa 427, 431, 41 N.W.2d 16, 19. The distinction between patent and latent ambiguity as a test for admission of extrinsic evidence to ascertain real meaning or intention is apparently disappearing. Stoffel v. Stoffel, supra.

There can be no question of the admissibility of the extrinsic evidence which disclosed the latent ambiguity. "To discover a latent ambiguity it is proper to go outside the instrument to ascertain whether the words used aptly fit the facts existing when the instrument was executed." 32 C. J. S., Evidence, section 961b(2), page 917.

Nor can there be doubt as to the admissibility of extrinsic evidence for the purpose of identifying an ambiguously designated beneficiary of a charitable bequest. Chapman v. Newell, 146 Iowa 415, 426, 125 N.W. 324; In re Estate of Stuart, 184 Iowa 165, 168 N.W. 779; Beidler v. Dehner, 178 Iowa 1338, 1341, 1342, 161 N.W. 32; In re Estate of Durham, 203 Iowa 497, 500 et seq., 211 N.W. 358; In re Estate of Canterbury, 226 Iowa 586, 284 N.W. 807.

The cited cases are not factually in point here but they abundantly hold extrinsic evidence admissible to show the intent of a testator when there is doubt from his language as to the identity of the beneficiary of a charitable bequest.

The testimony here supports the decree awarding the residuary estate to the American Cancer Society, Inc.

The briefs have many ramifications but what we have said disposes of the various contentions made by appellants. Our conclusion is that the decision of the trial court must be sustained and it is so ordered.—Affirmed.

All JUSTICES concur.