**Helen M. CONN and Harris E. Long, Appellees,**

v.

**Wade WILLIAMS, Executor of the Estate of Daisy V. Williams Long, Appellant.**

**No. 83–1039.**

Supreme Court of Iowa.

Aug. 22, 1984.

John L. Butler of Lundy, Butler & Lundy, Eldora, for appellant.

R. Jeffrey Lewis and William W. Graham of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and CARTER, JJ.

REYNOLDSON, Chief Justice.

Plaintiffs Harris E. Long and Helen M. Conn filed this declaratory judgment action against Wade Williams as executor of the Daisy V. Williams Long estate, seeking a declaration that they succeeded to certain property under a provision in decedent's will. Following a trial in equity, the district court entered a decree for plaintiffs. The executor appeals and we affirm.

Harris and Helen are the children of Charles F. Long, usually known as C.F. Long, and his first wife. After this wife died Charles married Daisy. Charles was a banker who owned the controlling interest in the Union-Whitten State Savings Bank at Union, Iowa. He also had acquired approximately 756 acres of land, in two farms, located south of Union, Iowa. Daisy owned separate assets, including farmland located west of Union. Daisy referred to these assets as "Williams property," that being her maiden name.

C.F. Long died May 29, 1972. His will left all his property, including his farmland, in equal individual shares to Daisy, Harris and Helen. In June 1974, during the probate of C.F. Long's estate, these three owners formed a corporation, "Long Farms, Ltd.," and conveyed their interests in the Long farms to it. This was to secure better management of the farms and to avoid

ancillary administration if Harris, a Florida resident, should die.

In 1976 the three shareholders decided to sell the Long farms. Each of them separately appointed the Union-Whitten State Savings Bank as agent for this purpose. In order to avoid double taxation on the sale profit, they caused the corporation to reconvey the land to each of them in undivided one-third shares. Long Farms, Ltd., was then dissolved and its issued stock was canceled. The agent bank executed two separate installment contracts with buyers of the two farms. The combined purchase price totaled $890,000.

About two years later, on April 15, 1978, Daisy's will was drafted by attorneys other than those involved in the above transactions. She left her farmland to her three brothers and her "purely personal" property to a sister. Daisy bequeathed the bank stock in trust for the children of Harris and Helen for 30 years, to vest in them at the termination of the trust. In article VII she provided:

> I give, devise and bequeath unto H.E. Long and Helen Long Conn, share and share alike, whatever stock I may have in the Long Farms, Ltd. This bequest is made expressly subject to the payment of any indebtedness which I may have incurred and which shall be owing by me at the date of my death by reason of the organization and formation and operation of Long Farms, Ltd. and my executors shall first discharge all of said indebtedness by applying such of the Long Farms, Ltd. stock or its proceeds as may be required.

There followed a residuary clause for the benefit of Daisy's surviving brothers and sisters, including property that "consist[s] of, but without exclusion, bank accounts, both checking and savings, bonds, notes, and real estate and are the balance of any of my properties not hereinbefore disposed of."

In a separate article Daisy included the following provision:

> The property hereinbefore devised and bequeathed unto my brothers and sisters, and this property alone, is a part of my estate, which I will to the Williams relatives; and the property hereinbefore devised and bequeathed unto the children of H.E. Long and unto the children of Helen Long Conn was inherited by me under the will of my late husband Charles F. Long; and my said brothers and sisters are to have no part in what I devise and bequeath unto the said children of H.E. Long and unto the children of the said Helen Long Conn; and the said children of the said H.E. Long and the children of Helen Long Conn are to have no part in the properties I have devised and bequeathed unto my said brothers and sisters.

The testator executed codicils to this will on April 8, 1980, April 10, 1980, and September 10, 1980, but the changes have no direct relevancy to the issues now before us.

January 12, 1981, Daisy died. Wade Williams, her brother who became executor of her estate, discussed her will with Harris at the funeral. Williams stated "according to the will ... all of the C.F. Long property was going to the Long heirs and all the Williams property was going to the Williams heirs." Harris and Helen were listed as beneficiaries on the preliminary inheritance tax report and probate inventory in Daisy's estate.

In March of 1981, however, after the farm purchasers had made their installment payments to the agent bank, the defendant executor made a demand on the bank for one-third of the amount. He indicated the estate would not concede that the interest in the contracts passed to Harris and Helen under article VII of the will.

Harris and Helen then brought this declaratory judgment action seeking a decree that "Daisy V. Williams Long did intend to give, devise and bequeath [in article VII of her will] her interest in certain real estate ... formerly an asset of Long Farms, Ltd. and that Plaintiffs are entitled to inherit in accordance with such intent."

At trial, over continuous objections, Harris and Helen introduced strong and virtually uncontroverted evidence that this was Daisy's intent. This proof reflected there was a longtime, congenial relationship and respect between Harris, Helen and Daisy. The latter, in correspondence and with third persons, expressed the testamentary intention that the Long heirs should have the property she had obtained from the estate of C.F. Long, and that the Williams heirs should receive the property she had acquired in her own right. Such statements were made both before and after execution of her 1978 will.

Trial court entered findings of fact, conclusions of law and a decree in favor of Harris and Helen. It held article VII of the will contained a latent ambiguity requiring extrinsic evidence for its successful resolution. The court decreed that "paragraph VII ... devise[d] to H.E. Long and Helen Long Conn ... all of the decedent's undivided interest in and to the real estate contract[s]" and post-death payments thereunder.

Appealing, the executor contends the will was not latently ambiguous, thus extrinsic evidence should not have been considered. He argues Daisy's will must be applied as written, and the literal language of article VII would pass no property.

I. We recently outlined the scope of our review in *Russell v. Johnston*, 327 N.W.2d 226, 228 (Iowa 1982):

> A declaratory judgment to construe or interpret a decedent's will is tried in equity and our review is de novo. *Matter of Estate of Kruse*, 250 N.W.2d 432, 433 (Iowa 1977); *Matter of Estate of Miguet*, 185 N.W.2d 508, 513 (Iowa 1971). In a de novo review we must make findings of fact anew; however, when considering the credibility of the witnesses we give weight to the fact findings of the trial court, although we are not bound by them. *See* Iowa R.App.P. 14(f)(7).

*See Elkader Production Credit Association v. Eulberg*, 251 N.W.2d 234, 236 (Iowa 1977).

In this case our finding that Daisy intended her interest in the C.F. Long farm contracts pass to Harris and Helen is reinforced by trial court's similar view, arrived at following the convincing testimony of disinterested persons. In a 1974 letter Daisy wrote that "when I leave this world I intend for my interest in our Bank, and my ⅓ interest in the land south of Union to go to the Long heirs .... This is my own idea."

■ II. We are convinced that extrinsic evidence has a place in this litigation. The general rule, quoted with approval in *Widney v. Hess*, 242 Iowa 342, 352, 45 N.W.2d 233, 239 (1950), appears in 32 C.J.S. *Evidence* § 961(b)(2) (1964):

> To discover a latent ambiguity it is proper to go outside the instrument to ascertain whether the words used aptly fit the facts existing when the instrument was executed.

Of course, there is no question concerning the admissibility of extrinsic evidence to show the latent ambiguity. *Widney*, 242 Iowa at 352, 45 N.W.2d at 239 (Evidence admitted to show there was no organization named "National Cancer Fund" as provided in testator's will; residuary estate awarded to the American Cancer Society, Inc.).

The following from *Russell*, 327 N.W.2d at 229, is relevant here:

> In ascertaining the intent of the testator, which is the guiding light in will interpretation, we rely primarily on the language contained in the will; however, the substance and intent, rather than the words, are to control. To ascertain the substance and intent we examine the entire will, and the circumstances surrounding the decedent at the time he made the will, to determine the scheme of distribution and, ultimately, the testator's intent.

(Citations omitted.) We have held a testator's intent is not to be ascertained from a single will provision; the will must be considered as a whole, each part in relationship to every other part and each given meaning and effect if possible. *Eulberg*, 251 N.W.2d at 237–38. In *Russell*, 327

N.W.2d at 230, and in *Porter v. Porter*, 286 N.W.2d 649, 654 (Iowa 1979), we quoted with approval the following from *Davis v. Davis*, 24 Ohio Misc. 17, 24, 258 N.E.2d 277, 282 (Ct.C.P.1970):

When a testator's will clearly reveals a general plan or intention as to the disposition of his property, and a situation arises that is not within the express language of the will, such general plan may be regarded as existing but incompletely expressed, and the failure to provide for the situation inadvertent rather than intentional, and a gift may be implied for the purpose of completing the general plan.

III. The general plan of Daisy's will is apparent from the instrument. The various bequests would have passed all the "Long property" to the descendents of C.F. Long and all of the "Williams property" to Daisy's relatives, if only Long Farms, Ltd., had not conveyed the Long farms and dissolved. Daisy's testamentary intent is made even more apparent by the gratuitous observation that "[t]he property hereinbefore devised and bequeathed unto my brothers and sisters, *and this property alone, is a part of my estate*, which I will to the Williams relatives" (emphasis added), and by her testamentary admonition to her executor that "GOOD WILL is a very important asset and I feel all concerned will say 'well done.'" Finally, the itemization of the assets passing in the article VIII residuary clause, although by terms not inclusive, is notable for its failure to include Daisy's approximately $210,000 interest in the farm contracts.

■ The latent ambiguity in the will appears in article VII, which devised stock in Long Farms, Ltd., a corporation that had been dissolved two years earlier.[1] No one in this litigation questions Daisy's legal competency. The record shows she was about eighty-one years of age when she executed the will. She was legally blind and resided in a nursing home for several years prior to her death. Various exhibits disclose that the Eldora attorneys who drafted her will probated the C.F. Long estate and filed in that proceeding an application for the executors to surrender possession of the Long farms to Harris, Helen and Daisy. This application expressed the intention of these beneficiaries to convey the property to Long Farms, Ltd.

Exhibits further show, however, that a Des Moines law firm and a Des Moines accountant carried out the incorporation and dissolution of Long Farms, Ltd. This same accountant also prepared the corporate tax returns. Yet another lawyer prepared the powers of attorney and revised the land contracts. Although Daisy signed the dissolution papers in Des Moines, we find no other evidence she ever grasped the fact the corporation had been dissolved. The bequest indicates she did not. Further, the exhibits do not suggest that the will drafting firm realized the corporation had been dissolved. The article VII language bequeathing "whatever stock I may have in the Long Farms, Ltd." might be interpreted as a cruel and uncharacteristic joke on persons for whom Daisy obviously had respect and affection. *See In re Ferguson's Will*, 194 Misc. 840, 87 N.Y.S.2d 735, 737 (N.Y.Sur.Ct.1949) ("Assuming as, in the absence of any indication to the contrary, we must, that the testatrix was not joking but endeavoring to express a serious intent, the resolution here is self-evident."). We find it more logical to view the phrase as the result of uncertainty in the minds of Daisy and the scrivener as to the exact number of corporate shares she held. Of course, the attorney drafting the will could have offered testimony on this

---

1. The dissolution of the corporation prior to the execution of the will makes the doctrine of ademption inapplicable here. Ademption may occur when property specifically given under a will is *later* voluntarily destroyed or disposed of so that it does not exist at the testator's death. The general rule does not permit something else to be substituted for that which was given origi-

nally, and the gift is said to have ademed. In re Estate of Wolfe, 208 N.W.2d 923, 924 (Iowa 1973). *See* 6 *Page on the Law of Wills* § 54.6 (Bowe-Parker rev. ed. 1961) ("If testator did not own the property when he made his will, or if it had then ceased to exist, such failure would ordinarily not be classed as an ademption ....").

point, but he was unavailable, serving as the executor's counsel in this litigation and asserting on executor's behalf that extrinsic evidence was inadmissible.

IV. Our holding that the bequest passes Daisy's interest in the Long farm contracts finds support in decisions from other jurisdictions. *In re Cartledge's Estate,* 118 Misc. 131, 192 N.Y.S. 838 (1922), *aff'd,* 236 N.Y. 515, 142 N.E. 265, *aff'd,* 203 A.D. 899, 197 N.Y.S. 902 (1923), is factually the mirror image of the case before us. There the bequest was of "all real estate owned by me" although testator owned no real estate at the time of execution. She had owned real estate, together with the siblings to whom she sought to bequeath her share, but had deeded it with them to a commonly owned corporation. The New York courts awarded the stock to her siblings, stating, "What she intended to bequeath was the stock of the realty Corporation which she owned, not to devise realty which she did not own. It is the substance of the attempted gift with which we are chiefly concerned, not the words in which it was attempted to be given." *Id.* at 133, 192 N.Y.S. at 839.

Other decisions lend similar support. *See In re Ferguson's Will,* 194 Misc. at 842, 87 N.Y.S.2d at 737 (Bequest of "a bond and mortgage which I hold on the Olmstead Farm" held to convey testator's interest in an installment contract for the sale of that property, extrinsic evidence disclosing there was no bond and mortgage and the court further finding this would avoid a miscarriage of testator's intent.); *Schubel v. Bonacker,* 331 S.W.2d 552, 555–56 (Mo.1960) (finding testator's stock in Industrial Bancshares equivalent to the nonexistent stock in Industrial Bank which testator had bequeathed to plaintiff. Industrial Bancshares was a bank holding company that owned the Industrial Bank.); *Buder v. Stocke,* 343 Mo. 506, 121 S.W.2d 852, 856 (1938) (interpreting "all my holdings of shares of [x] stock" and any *"claims,* which I now hold of said company" to encompass testator's continuing interest in a small business whose corporate charter had been forfeited after the mak-

ing of testator's will) (emphasis in original); *In re Estate of Sharp,* 512 P.2d 160, 165–66 (Okla.1973) (Where testator bequeathed "cash equivalent to the value of the stock I now own" in two named corporations, neither of whose stock she owned at her death, the court admitted extrinsic evidence to show that the stock referred to in the bequest was the same as that forming the corpus of a trust of which testator was a beneficiary.).

 We hold trial court was right in considering extrinsic evidence to clarify the ambiguity in Daisy's will. It correctly enforced her intent, on the basis of convincing evidence, to bequeath her interests in the Long farm contracts to the plaintiffs. We affirm the district court's decree.

AFFIRMED.